In re Carl H. NEUMAN, d/b/a Lydia E. Hall Hospital, Syosset Hospital, and Long Island Food Company, Debtor.

SARAH R. NEUMAN FOUNDATION, INC., Plaintiff–Appellee,

v.

James GARRITY, Trustee, Defendant,

and

United States of America, Intervenor–Appellant.

James GARRITY, Trustee, Plaintiff,

and

United States of America, Intervenor–Appellant,

v.

SARAH R. NEUMAN FOUNDATION, INC., et al., Defendants–Appellees.

James GARRITY, Trustee, Plaintiff,

v.

HOSPITAL CONSULTANTS, INC., et al., Defendants–Appellees.

No. 89 Civ. 6995 (KMW).

United States District Court, S.D. New York.

Jan. 18, 1991.

Nancy Kilson, Asst. U.S. Atty., U.S. Attorney's Office, New York City, for plaintiff-appellant USA.

Andrew D. Gottfried, Zalkin, Rodin & Goodman, New York City, for defendant-appellee James L. Garrity.

Eugene I. Farber, Katz, Kleinbaum, Farber & Karson, White Plains, N.Y., for Carl Neuman, Sarah Neuman Found., Con. Care, LBN, LBN Consultants, James Square & related parties.

Barry Silberzweig, Graubard, Mollen, Dannett & Horowitz, New York City, for Edward Leffler.

Edward P. Zujkowski, Emmet, Marvin & Martin, New York City, for defendant-appellant Bank of N.Y.

## MEMORANDUM OPINION AND ORDER

### KIMBA M. WOOD, District Judge.

Intervenor-appellant the United States of America ("the Government") appeals from the August 21, 1989 order of the United States Bankruptcy Court for the Southern District of New York, the Honorable Prudence B. Abram, United States Bankruptcy Judge, granting a motion to: (1) vacate a January 29, 1987 order permitting the Government to intervene in two adversary proceedings pending in the bankruptcy court, and (2) declare that the Government may not intervene in a third adversary proceeding. The bankruptcy court's decision is reported at 103 B.R. 491 (S.D.N.Y. 1989). The Government also seeks to have this court remand this action to the bankruptcy court with a direction that the clerk reassign this case to a new, randomly-selected bankruptcy judge. For the reasons set forth below, this court reverses the bankruptcy court's decision regarding intervention but denies the Government's application with respect to reassignment.

*Background*

Debtor Carl Neuman filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C.A. § 1101 *et seq.* (the "Code"), in the bankruptcy court on December 11, 1984. Judge Abram has noted that the Government appears to be the "single largest creditor of the estate." *In re Neuman, supra* 103 B.R. at 493. The Government claims that, as a result of overpayments, both pre- and post-petition, received by Neuman in his capacity as sole proprietor of the now-defunct Lydia E. Hall Hospital, the Health Care Financing Administration of the United States Department of Health and Human Services has a claim in the range of $9,000,000.

From the time Neuman's Chapter 11 petition was filed until March, 1986, Neuman acted as debtor-in-possession. On March 18, 1986, James L. Garrity, Sr. was nominated, approved and qualified as the Chapter 11 Trustee. The Trustee was initially represented by his own law firm, Garrity, Connolly, Lewis, Lowry, Grimes & Silverman. In October 1988, Zalkin, Rodin & Goodman succeeded as counsel to the Trustee.

In December, 1986, the Trustee commenced an adversary proceeding against appellee Sarah R. Neuman Foundation, Inc. (the "Foundation") (*James Garrity, Trustee, v. Sarah R. Neuman Foundation, Inc.,*

Adv.Pro. No. 86–5815A), and the Foundation commenced an adversary proceeding against the Trustee (*Sarah R. Neuman Foundation, Inc. v. James Garrity, Trustee,* Adv.Pro. No. 86–5856A). The bankruptcy court, on January 30, 1987, granted the Government's motion to intervene in those proceedings. In March 1988, the Trustee commenced a third adversary proceeding, entitled *James Garrity, Trustee v. Hospital Consultants, Inc., et al.* (Adv.Pro. No. 88–5210A), in which the Government has participated without a formal order of intervention. The adversary proceedings concern, *inter alia,* the validity and enforceability of certain leases for and mortgages on the Sarah R. Neuman Nursing Home and Pavilion. *Neuman,* 103 B.R. at 493.

By motion dated December 20, 1988, Neuman and various related individuals and entities moved for an order vacating the January 30, 1987 order granting the Government status as a party-intervenor in the first two adversary proceedings and declaring that the Government is not permitted to intervene in the third adversary proceeding. The motion was supported by Edward Leffler, James Square Nursing Home, Inc., James Square Associates, James Square II Realty Corporation, Westcliff Manor Associates, Westcliff Manor Realty Corp. and Hospital Consultant, Inc. (collectively referred to as the "Leffler defendants"), who are among the defendants in the first and third adversary proceeding.

The Government, along with the Trustee, opposed the motion below.

■ On August 21, 1989, the bankruptcy court granted the motion. The Government's appeal followed.[1] The appeal is opposed by the Leffler defendants and by Neuman, his wife, Loretta B. Neuman and other Neuman-related entities.[2]

## DISCUSSION

### Intervention

■ This appeal raises the question whether a pre-petition unsecured creditor or an administration creditor has either an absolute or a conditional right to intervene in an adversary proceeding commenced by a Chapter 11 Trustee. The court has jurisdiction over this bankruptcy appeal pursuant to 28 U.S.C. § 158(a). In reviewing a bankruptcy court's decision, findings of fact are reviewable only for clear error, but legal questions are subject to plenary review. *Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81, 85 (3d Cir.1988).

■ Although the Second Circuit has not yet faced the issue, several courts have addressed the question whether Bankruptcy Code § 1109(b) gives creditors an absolute right to intervene. The Third Circuit, in *In re Marin Motor Oil, Inc.,* 689 F.2d 445 (3d Cir.1982), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983),

1. In a letter to the court, Trustee's successor counsel stated that it had "determined not to join the Government in the present appeal" and that it "takes no position on the intervention issue before this Court." Letter to the Court from William Schrag (Nov. 21, 1989) at 2.

2. The Government argues that the brief submitted on behalf of the Neuman entities should be stricken because Neuman has no standing to be heard on this appeal. The Government points out that Neuman and related parties have settled their differences with the Trustee in the bankruptcy case and that the Government has consented to that settlement, such that none of the Neuman entities will be participants in the continued litigation of the adversary proceedings before the bankruptcy court; the Government points out further that, by the Neuman entities' own admission, the claims of Neuman's creditors overwhelm the assets that will be available for distribution to those creditors in this case. I agree that the Neuman entities have no interest in the appeal of the intervention order. *See Kane v. Johns–Manville Corp.,* 843 F.2d 636, 642 n. 3 (2d Cir.1988) ("In this respect, the creditor differs from the 'hopelessly insolvent debtor' who is not permitted to challenge orders affecting the estate because the estate will go entirely to the creditors, and the debtor has no interest in what happens to it."), *cert. denied,* 488 U.S. 868 (1988). Accordingly, the Neuman entities' brief was not considered by the court on the issue of intervention. However, because the Neuman entities have articulated reasons for their interest in having Judge Abram remain as the bankruptcy judge in this case, *see* Neuman Parties' Brief at 39, the court has considered their brief with respect to the Government's application to have this case reassigned to a new bankruptcy judge.

answered the question in the affirmative. As Judge Abram noted in her opinion, *see Neuman*, 103 B.R. at 496, a number of decisions have followed *Marin* or cited it with approval.

The *Marin* court began its analysis with the language of § 1109(b). *See Marin*, 689 F.2d at 449. That section states as follows: "A party in interest, including the debtor, the trustee, a creditor's committee, an equity security holders' committee, or any indenture trustee, may raise and may appear and be heard *on any issue in a case under this chapter.*" 11 U.S.C. § 1109(b) (emphasis added). Appellants in that action urged the court to adopt a narrow interpretation of the term "case" so as to exclude "adversary proceedings" from its definition. The court noted that "[n]either the term 'case' nor the term 'adversary proceeding' is defined by the Bankruptcy Code; indeed, the Code makes no mention of 'adversary proceedings.'" 689 F.2d at 450.[3] The court noted further, however, that "[m]ost litigated matters in a bankruptcy case are adversary proceedings; consequently the appellants' proposed reading of section 1109(b) would drastically restrict the rights of parties to appear and be heard." *Id.* (citation omitted). The court went on to state that "[a]ny doubt about the meaning of the language of section 1109(b) would appear to be dispelled by the legislative history, which states that section 1109(b) '[p]rovides, *in unqualified terms*, that any creditor, equity security holder, or an indenture trustee shall have the right to be heard as a party in interest under this chapter in person, by an attorney, or by a committee. It is derived from section 206 of chapter X (11 U.S.C. 606).'" *Id.* at 451 (quoting S.Rep. No. 95–989, 95th Cong., 2nd Sess. 116 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5902 (emphasis added in *Marin*).

Former § 206 was discussed by Judge Duffy in *In re Duplan Corp.*, 450 F.Supp. 790 (S.D.N.Y.1978), where he held that it provided an indenture trustee with the right to intervene in an adversary proceeding without first requesting the court's leave to do so. Former Section 206 of the Bankruptcy Act provided that " '[t]he debtor, the indenture trustee, and any creditor or stockholder of the debtor shall have the right to be heard on all matters arising in a proceeding under this chapter.'" *Duplan*, 450 F.Supp. at 791 (quoting former 11 U.S.C. § 606). Judge Duffy noted that "Section 206 was enacted to eliminate the previously restricted rights of interested parties to participate in Chapter X proceedings.... It was Congress' intention thereby to remove procedural barriers to full participation by such persons." *Id.* at 791. As the court noted in *Marin*, "[t]he statutory provision which section 206 replaced had given creditors and stockholders an absolute right to be heard on only a limited number of issues, and it was to remedy perceived deficiencies in this system of limited rights that section 206 was enacted." *Marin*, 689 F.2d at 451.

I agree with the *Marin* court that "[t]here is no basis for concluding that by changing the statutory language from 'all matters arising in a proceeding under this chapter' to 'any issue in a case under this chapter' Congress meant to effect a sweeping restriction in the right of interested parties to participate in litigated matters connected with bankruptcy reorganizations." *Id.* at 453.

The Fifth Circuit, however, in *Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283 (5th Cir.1985), reached a different result with respect to the question whether § 1109(b) provides an absolute right to intervene. Although noting that "[b]ased on the Bankruptcy Code alone ... the argument that § 1109(b) creates an absolute right to intervene in adversary proceedings appears strong," *id.* at 1286, the court went on to find that "[t]his argument loses much of its force ... when juxtaposed with the procedural rules governing intervention." *Id.* at 1286. Fed.R. Civ.P. 24(a)(1) provides for intervention as of right "when a statute of the United States confers an unconditional right to

---

**3.** The term "adversary proceeding" is defined in Bankruptcy Rule 7001 and was, at the time *Marin* was decided, defined in Bankruptcy Rule 701, *see Marin*, 689 F.2d at 450.

intervene," and Bankruptcy Rule 7024 states that "Rule 24 F.R.Civ.P. applies in adversary proceedings." The Fifth Circuit pointed out in *Fuel Oil*, however, that "courts have been hesitant to find unconditional statutory rights of intervention." *Fuel Oil*, 762 F.2d at 1286. The court also noted that "an examination of the Code of Judiciary and Judicial Procedure (Title 28, United States Code) and of the Bankruptcy Rules reveals that Congress in many instances has drawn distinctions between bankruptcy 'cases' and the proceedings related to them" *Id.* Based on these considerations, the court held that "Congress did not create an absolute statutory right to intervene in bankruptcy adversary proceedings through § 1109(b).... We are convinced that Congress must have intended courts to apply Rule 24(a)(2) rather than Rule 24(a)(1) to applications to intervene in bankruptcy adversary proceedings under § 1109(b)." *Id.* at 1287.

With the exception of Judge Abrams, the bankruptcy courts in this district that have dealt with the issue have approved the *Marin* reasoning rather than that of *Fuel Oil*. As Judge Brozman noted in *In re Longfellow Indus., Inc.*, 76 B.R. 338, 341 (S.D.N.Y. 1987), "*Fuel Oil* was criticized by two respected commentators who reasoned that the clear language of section 1109(b), which grants a substantive right, should not have been read by the Fifth Circuit to be modified or limited by procedural rules.... [W]e believe the *Marin* approach to be the preferable one...." (holding intervention proper under either standard) (citations omitted). *See also In re Overmyer*, 30 B.R. 123, 125 (S.D.N.Y.1983) (citing *Marin* and noting that "where the trustee or debtor in possession has already initiated an adversary proceeding, the creditors' committee has an *absolute right to intervene as a party in interest under Code § 1109(b)*.") (emphasis added).

I note that one court concluded that *Marin* was no longer good law on the ground that it was decided before the adoption of the present Bankruptcy Rules. *See In re Allegheny Int'l, Inc.*, 93 B.R. 903 (W.D.Pa. 1988), *rev'd in relevant part*, 107 B.R. 518 (W.D.Pa.1989); *accord, In re Charter Co.*,

50 B.R. 57 (W.D.Tex.1985). As Judge Abram pointed out, however, "[t]his rationale is unconvincing because present Bankruptcy Rule 7024 is virtually identical to former Bankruptcy Rule 724, which was applicable when *Marin* was decided, and because it elevates procedural rules over statutory provisions." *Neuman*, 103 B.R. at 496. Since Judge Abrams' decision in this case, *Allegheny* has been reversed. *See In re Allegheny Int'l, Inc.*, 107 B.R. 518 (W.D.Pa.1989). Noting that the bankruptcy court had based its rejection of *Marin* on the Advisory Committee notes to Bankruptcy Rules 2018 and 7024, *see* 107 B.R. at 523, the district court rejected that analysis:

> Bankruptcy Rules are promulgated by the Supreme Court pursuant to 28 U.S.C. § 2075. However, the Supreme Court's authority to promulgate rules is limited. Congress has required that '[s]uch rules shall not abridge, enlarge, or modify any substantive right.' 28 U.S.C. § 2075. The *Marin* Court construed 11 U.S.C. § 1109(b) as providing a substantive right to intervene. Therefore, Bankruptcy Rules 2018 and 7024 are incapable of nullifying this substantive right. Alternatively, even if § 1109(b) is construed as a procedural provision, the bankruptcy rules do not limits its effect. Rules promulgated pursuant to 28 U.S.C. § 2075 must be consistent with the applicable bankruptcy statutes. Bankr.R. 1001 Advisory Committee note. Any procedural matters set forth in Title 11 and 28 of the United States Code prevail over bankruptcy rules. *Id.* Therefore, the argument that the promulgation of Rules 2018 and 7024 modified the scope of § 1109(b) is rebutted by 28 U.S.C. § 2075 and Rule 1001.

*Id.* at 524–25. While noting that other arguments against *Marin* had been made (citing, *e.g.*, *Fuel Oil* ), the District Court for the Western District of Pennsylvania noted that it was constrained to follow *Marin*. *See id.* at 525.

I agree that *Marin* is still good law and find its analysis persuasive. Based on the language of Bankruptcy Code § 1109(b), I

find that Congress intended to grant an absolute statutory right of intervention to creditors such as the Government in this case.[4] Accordingly, I reverse Judge Abrams' August 21, 1989 order and remand for proceedings not inconsistent with this opinion.

*Reassignment*

■ The Government's application to have this case re-assigned to a new judge is, however, denied. The Government relies primarily on *United States v. Robin*, 553 F.2d 8 (2d Cir.1977). The Second Circuit there set forth the standard applicable to the issue of reassignment:

> the principal factors considered by us in determining whether further proceedings should be conducted before a different judge are (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id.* at 10.

Given that the basis upon which I reject Judge Abrams' analysis on intervention rests simply on a legal interpretation, I do not find that Judge Abrams will have substantial difficulty in putting aside previously-expressed views. Nor do I find that her frustration with previous reversals of orders compels reassignment, given that she has stated that "I am not going to decide the matters differently *except to the extent that I have been directed by an appellate court to treat my decision as in error.*" Appendix at 561. *Cf. Sobel v. Yeshiva Univ.*, 839 F.2d 18, 37 (2d Cir.1988) (court remanded case to a different judge after noting that "[w]e are frankly disturbed by the manner in which the district court treated this case on our initial remand";

the court noted further that "[w]hile remanding to a different district judge is an 'extraordinary remedy ... [to] be reserved for the extraordinary case,' we believe that this case is, indeed, extraordinary." (Quoting *United States v. Robin*, 545 F.2d 775, 784 (2d Cir.1976) (Timbers, J., dissenting)), *cert. denied*, 490 U.S. 1105, 109 S.Ct. 3154, 104 L.Ed.2d 1018 (1989).

Similarly, I do not find that concerns about the appearance of justice compel reassignment. Although Judge Abrams has been critical of the Government's behavior in this case in the past, including its appeals of earlier rulings, *see* Appendix at 989–91, she has also been critical of the Trustee, *see id.* The Government points to Judge Abrams' statement on the record that "I have given serious consideration to the possibility that I should recuse myself in this case. I have given very serious consideration to the possibility that for whatever reason this was the kind of case where a judge ought to recuse themselves because their inability to make a case move forward had caused it to be inappropriate for them to attend the case." *Id.* at 989. However, Judge Abrams' evident frustration with the slow progression of the case does not compel a finding that this case should be reassigned. It is not uncommon for judges to express frustration with lawyers and other individuals who appear before them, as well as with the progress of their cases.

Most important, I find that any reassignment would entail substantial waste and duplication of effort. Judge Abrams has been the judge assigned to this complex case for more than four years; she is intimately familiar with it and has played an active role in moving it forward. To reassign the case now would not be in the interests of justice.

## CONCLUSION

The bankruptcy court's order of August 21, 1989 is reversed upon a finding that the Government has a statutory right to inter-

---

4. Thus, I need not reach the Government's argument that it was entitled to intervene pursuant to Rule 24(a)(2). *See Fuel Oil,* 762 F.2d at 1287.

vene in adversary proceedings. The Government's application to have this case assigned to a new bankruptcy judge is denied.

SO ORDERED.