**In re 995 FIFTH AVENUE ASSOCIATES, L.P.,**
Debtor.

**995 FIFTH AVENUE ASSOCIATES, L.P., Plaintiff–Appellee,**

v.

**NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, James W. Wetzler, as Commissioner of Taxation and Finance, and Edward V. Regan, as Comptroller of the State of New York, Defendants–Appellees.**

No. 93 Civ. 0026 (RPP).

United States District Court,
S.D. New York.

Aug. 17, 1993.

---

Robert J. Kaplan, New York City, for intervenor-appellants L.A. Cotton & Co., Inc. and Linda A. Guterman.

Lord Day & Lord, Barrett Smith, New York City by Laurence J. Kaiser, Karen M. Klein, for plaintiff-appellee 995 Fifth Ave. Associates L.P.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City by David Cook, for defendants-appellees New York State Dept. of Taxation and Finance, et al.

## OPINION AND ORDER

ROBERT P. PATTERSON, JR., District Judge.

Appellants, L.A. Cotton & Co., Inc. and Linda A. Guterman, its successor in interest (collectively, "LAC"), appeal from the November 16, 1992 order of the United States Bankruptcy Court for the Southern District of New York (Brozman, J.), denying its motion pursuant to 11 U.S.C. § 1109(b) to intervene as a party-plaintiff creditor in an adversary proceeding commenced by the bankrupt estate of plaintiff-appellee 995 Fifth Avenue Associates L.P. ("995"). For the reasons set forth below, the order of the Bankruptcy court is affirmed.

### BACKGROUND

995 was the owner and operator of the Stanhope Hotel, located at 995 Fifth Avenue in New York City, and filed for Chapter 11 bankruptcy on February 4, 1988. 995's plan of reorganization under Chapter 11 was confirmed by the Bankruptcy Court in July 1989. Pursuant to that plan, 995 was to sell its interests in the Stanhope Hotel.

Appellant LAC is a creditor of 995's bankruptcy estate (the "Estate"), as is the New York State Department of Taxation and Finance (the "State").

995 filed a request for exemption from the New York State transfer gains tax under 11 U.S.C. § 1146(c), which exempts transfers of real property made pursuant to a confirmed plan from the payment of a "stamp tax or similar tax." The State denied 995's request for exemption, forcing 995 under protest to pay the assessed transfer gains tax in order to close the sale of the Stanhope Hotel. On January 13, 1989, the State removed approximately $2.6 million (the "Funds") out of the approximately $76 million in proceeds of the post-petition sale of 995's interest in the Stanhope Hotel, applying the $2.6 million to the payment of transfer gains taxes that the State claimed were due for the sale of the Stanhope Hotel. LAC claims that it received neither notice nor a hearing with respect to the State's removal of the Funds for tax purposes.

On February 28, 1989, 995 commenced an adversary proceeding seeking to recover the $2.6 million from the State on the grounds that the post-petition sale was exempt from the transfer gains tax and the State had unlawfully removed the funds

from the property of the estate. 995 moved for summary judgment on its claim against the State, which argued that it was immune from suit pursuant to the Eleventh Amendment and that the New York transfer gains tax was not a "stamp tax or similar tax."

On August 1, 1990, the Bankruptcy Court granted summary judgment in favor of 995. R. at 72, 74. The Bankruptcy Court's order granting summary judgment contained four decretal paragraphs:

1. The Sale was and is exempt from the payment of the Gains Tax pursuant to Section 1146(c) of the Bankruptcy Code.

2. New York State has waived its sovereign immunity with respect to the Gains Tax for which it has filed a proof of claim in this case.

3. [The State] be, and they hereby are authorized and directed to refund to the Plaintiff, within eleven (11) days after the date of entry of this order, the Gains Tax Payment plus interest at the legal rate from the date on which the Gains Tax Payment was made through and including the date on which the refund directed by this order is delivered to the Plaintiff.

4. [The State's] cross-motion for summary judgment for failure to state a claim be, and the same hereby is denied.

*Id.* at 74.

On appeal, the district court affirmed the grant of summary judgment, finding that the State was not immune to suit under the Eleventh Amendment and that, because the New York transfer gains tax was a stamp tax or similar tax, 995 was entitled to an exemption from the transfer gains tax, and directing the State to refund the gains tax paid by 995. 116 B.R. 384 (S.D.N.Y.1990); 127 B.R. 533 (S.D.N.Y.1991).

By decision dated April 13, 1992, the Second Circuit Court of Appeals affirmed the district court's decision that the State was not immune from suit under the Eleventh Amendment. The Second Circuit held, however, that the transfer gains tax "is not a 'stamp tax or similar tax,'" and reversed the district court's order "insofar as it directed New York [State] to refund gains tax paid by [995]." 963 F.2d 503, 509, 513 (2d Cir.1992). The Supreme Court denied 995's petition for a writ of certiorari. *See* —— U.S. ——, 113 S.Ct. 395, 121 L.Ed.2d 302 (1992).

On July 9, 1992, LAC moved, pursuant to 11 U.S.C. § 1109(b), to intervene in the adversary proceeding between the State and 995, relying solely on its status as a creditor of 995's estate. At the same time LAC filed an objection to the State's claim for transfer gains taxes. Both 995 and the State opposed LAC's motion to intervene pursuant to § 1109(b) on the grounds that (1) § 1109(b) does not apply to motions to intervene in adversary proceedings, (2) Rule 24 of the Federal Rules of Civil Procedure [1] is made applicable to adversary proceedings in bankruptcy by Bankruptcy Rule 7024, and (3) LAC's motion to intervene in the adversary proceeding between 995 and the State was untimely under Rule 24. *See* Fed.R.Civ.P. 24; *see* Bankr.R. 7024.

On December 15, 1992, LAC entered into a settlement agreement (the "Agreement") with Centrust Services Inc. ("Centrust"), pursuant to which LAC agreed to assign all of its claims against 995 and 995's estate to Centrust. Provision 3(f) of the Agreement states that the Agreement

"and the ... assignments are not intended to affect Linda A. Guterman's standing as a creditor of ... [995's] Estate in the New York Bankruptcy Action. In light of Linda A. Guterman's continuing interest in a recovery out of the Estate, and in maximizing such recovery, noth-

---

**1.** Rule 24(a) of the Federal Rules of Civil Procedure provides:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

ing in this Agreement or the aforesaid assignments shall adversely effect, impede or impair Linda A. Guterman's right to intervene in any adversary proceeding between the Debtor and the State of New York, to object to any claim against the Estate ... or to take any other action as she may deem necessary or proper to protect her continuing interest as a party in interest of the Estate."

995 Br.Ex.A.[2]

By order dated November 16, 1992, the Bankruptcy Court held that 11 U.S.C. § 1109(b) does not apply to adversary proceedings, and that LAC could intervene only pursuant to Fed.R.Civ.P. 24(b),[3] made applicable to bankruptcy adversary proceedings by Bankruptcy Rule 7024. R. at 214–18.[4] The Bankruptcy Court exercised its discretion to deny LAC's motion to intervene under Fed.R.Civ.P. 24(b). On January 28, 1993, LAC appealed the Bankruptcy Court's denial of its motion to intervene in the adversary proceeding. Both 995 and the State oppose the appeal.

## DISCUSSION

■ The Court has jurisdiction over this bankruptcy appeal pursuant to 28 U.S.C. § 158(a). The Bankruptcy Court's findings

of facts are reviewable only for clear error, while legal questions are subject to plenary review. *Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81, 85 (2d Cir.1988).

■ Three issues are presented on this appeal: (1) whether under 11 U.S.C. § 1109(b) a creditor's right to intervene in an adversary proceeding commenced by a Chapter 11 debtor is absolute; (2) if so, whether the Second Circuit's judgment reversing the district court's affirmance of summary judgment in favor of 995 terminated the adversary proceeding, thereby leaving no proceeding in which LAC may intervene; and (3) if so, whether LAC remains a creditor for purposes of section 1109 after assigning its interest to the Resolution Trust Corporation and Centrust Services, Inc. (collectively, "Centrust"). Because § 1109(b) does not provide an absolute right to intervene in adversary proceedings, issues (2) and (3) need not be addressed.[5]

11 U.S.C. § 1109(b) provides:

A party in interest, including the debtor, the trustee, a creditor committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may

2. Centrust has not sought to intervene in the adversary proceeding between 995 and the State.

3. Rule 24(b) of the Federal Rules of Civil Procedure provides in relevant part:

(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

4. On September 15, 1992, prior to entering its formal November 16, 1992 order denying LAC's motion to intervene, the Bankruptcy Court set forth its reasons for denying LAC's motion. First, it determined that § 1109(b) "does not grant an unconditional right of intervention to a party in interest." R. at 218. Second, among the factors favoring a denial of the motion under the permissive intervention rules of Fed. R.Civ.P. 24(b), the Bankruptcy Court pointed to the fact that permissive intervention will not be allowed "unless compelling showing of inade-

quate representation is made," R. at 219 (citing *In re Thompson,* 965 F.2d 1136, 1142 (1st Cir. 1992)), and that LAC had "failed to show that its interests, should they exist, are inadequately represented." *Id.* at 220. The Bankruptcy Court also noted that "[t]he fact that [LAC] wishes to attain intervenor status so as to avoid the Supreme Court's amicus curiae procedures is not a sufficient reason to allow it to intervene in this adversary proceeding." *Id.* The Bankruptcy Court stated that an additional reason for denying permissive intervention in the adversary proceeding was that 995's "power to conduct this suit would be plainly compromised by allowing intervention because an intervenor affects the course of litigation through its participation," *id.,* and intervention by the creditor would interfere with the power "of the Debtor to settle the litigation with the approval of this Court after notice to creditors." R. at 221.

5. In this appeal, LAC does not contend that it was entitled to intervene under Fed.R.Civ.P. 24. Therefore, it does not challenge the Bankruptcy Court's conclusion that LAC failed to meet the standards of permissive intervention under Fed. R.Civ.P. 24.

appear and be heard ·on any issue in a case under this chapter.

LAC argues that § 1109(b) affords any creditor of a debtor's estate the absolute and unqualified right to intervene in an adversary proceeding that is brought by the debtor. 995 urges an interpretation of the term "case" in § 1109(b) that excludes "adversary proceedings."

## A. *Other Circuits*

"Unfortunately, the Code does not explain the difference between a 'case,' in which [a creditor] plainly may intervene, and an 'adversary proceeding,' in which [a creditor] has a debatable right to intervene." *In re Bumpers Sales, Inc.*, 907 F.2d 1430, 1433 (4th Cir.1990). As a result, there is a split of authority between the Third Circuit and the Fifth Circuit as to whether § 1109(b)'s guarantee of an absolute right to intervene in bankruptcy cases extends to an adversary proceeding commenced by a debtor. The Third Circuit in *In re Marin Motor Oil, Inc.*, 689 F.2d 445 (3d Cir.1982), *cert. denied*, 459 U.S. 1206, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983), held that a creditors' committee had an absolute right to intervene in an adversary proceeding under § 1109(b). The Fifth Circuit in *Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283 (5th Cir.1985), reached the opposite result and held that § 1109(b) does not confer upon creditors an absolute statutory right to intervene in adversary proceedings.

The only other Circuit courts to address the issue of the applicability of § 1109(b) to adversary proceedings have indicated in dicta that the distinction between a "case" and an "adversary proceeding" is an important one in the context of § 1109(b), and that § 1109(b) probably does not provide an absolute right to intervene in adversary proceedings.

The First Circuit in *In re Thompson*, 965 F.2d 1136 (1st Cir.1992), addressed the issue of whether an individual creditor has a right to intervene in adversary proceedings pursuant to § 1109(b) in a Chapter 7 bankruptcy. The court characterized an "adversary proceeding" as "a subsidiary lawsuit

within the larger framework of a bankruptcy case," 965 F.2d at 1140, and in dicta rejected the notion that § 1109(b) confers an absolute right to intervene in adversary proceedings, *see id.* at 1142 n. 8 (citing *Fuel Oil Supply Co.*).

The Fourth Circuit in *In re Bumpers* also indicated that a distinction between cases and adversary proceedings may be drawn in interpreting § 1109(b). 907 F.2d at 1433–34. The court did not address whether § 1109(b) permitted creditors to intervene in adversary proceedings, however, because the court found it clear that the dispute before it was a case rather than an adversary proceeding. *Id.* at 1434.

### 1. *Marin and Neuman*

In *Marin*, the Third Circuit concluded that an absolute right to intervene in adversary proceedings under § 1109(b) comported with "the usual expectation of parties in interest that they will have a right to be heard, as parties in interest, by the tribunal adjudicating their interests. This expectation has its roots in notions of due process and fair play." 689 F.2d at 457. In its view, "[m]ost litigated matters in a bankruptcy case are adversary proceedings," and a narrow interpretation of the term "case" "would drastically restrict the rights of parties to appear and be heard." *Id.* at 450. Accordingly, the Third Circuit stated that it was "especially reluctant to adopt" such an interpretation with regard to § 1109(b) "when to do so would frustrate this expectation of participation." *Id.* at 457. In addition, the court noted that § 1109(b) not only grants the right to appear and be heard in a "case" but "on any issue in a case," and explained Congress's failure to mention adversary proceedings in § 1109(b) by observing that "Congress did not specifically mention adversary proceedings anywhere in the Bankruptcy Code." *Id.* at 451.

The only court within the Second Circuit to address the issue of intervention in an adversary proceeding pursuant to § 1109(b) also rejected a narrow interpretation of the term "case." Relying on the analysis in

*Marin*, Judge Wood in *In re Neuman* determined that § 1109(b) gives creditors an absolute right to intervene in adversary proceedings as well as cases. *In re Neuman*, 124 B.R. 155 (S.D.N.Y.1991) (Wood, J.).

The court in *Neuman* began its analysis by taking *Marin*'s cue about the legislative history of § 1109(b), which the Third Circuit stated was "derived from section 206 of chapter X (11 U.S.C. § 606)." *Marin*, 689 F.2d at 451 (quoting S.Rep. No. 95–989, 95th Cong., 2d Sess. 116 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5902).[6] *Neuman* examined Judge Duffy's analysis of 11 U.S.C. § 606 (section 206) in *In re Duplan Corp.*, 450 F.Supp. 790 (S.D.N.Y.1978), which held that section 206 provided an indenture trustee with the right to intervene in an adversary proceeding without first requesting the court's leave to do so. *See Neuman*, 124 B.R. at 158 (quoting *Duplan*, 450 F.Supp. at 791). Judge Duffy based his decision in *Duplan* on the ground that "Section 206 was enacted to eliminate the previously restricted rights of interested parties to participate in Chapter X [bankruptcy] proceedings.... It was Congress' intention thereby to remove all procedural barriers to full partic-

ipation by such persons." *Duplan*, 450 F.Supp. at 791.[7]

Judge Wood concluded that § 1109(b) applied to motions to intervene in bankruptcy adversary proceedings and that Bankruptcy Rule 7024 does not have the effect of modifying § 1109(b). Judge Wood noted that "[t]he *Marin* court construed 11 U.S.C. § 1109(b) as providing a substantive right to intervene." 124 B.R. at 159. Citing 28 U.S.C. § 2075, which provides that the Bankruptcy Rules "shall not abridge, enlarge, or modify any substantive right," the court in *Neuman* reasoned that "[t]herefore, Bankruptcy Rule[ ] ... 7024 [is] incapable of nullifying this substantive right to intervene." 124 B.R. at 159. In the alternative, *Neuman* held that "[e]ven if 11 U.S.C. § 1109(b) is construed as a procedural provision," Bankruptcy Rule 7024 "does not limit its effect" since under Bankruptcy Rule 1001, "[a]ny procedural matters set forth in Title 11 and 28 of the United States Code prevail over bankruptcy rules." *Id.* (citing Bankr.R. 1001 advisory committee note). Therefore, *Neuman* concluded that "the argument that the promulgation of Rule ... 7024 modified the scope of § 1109(b) is rebutted by 28 U.S.C. § 2075 and Rule 1001." *Id.* Based on these considerations, the court in *Neuman*

---

**6.** Section 206 of the Bankruptcy Act provided that:

> The debtor, the indenture trustees, and any creditor or stockholder of the debtor shall have the right to be heard on all matters arising in a proceeding under this chapter. The judge may, for cause shown, permit a labor union or employees' association, representative of employees of the debtor, to be heard on the economic soundness of the plan affecting the interests of the employees.

**7.** *Neuman* also asserts that "the bankruptcy courts in this district that have dealt with the issue have approved the *Marin* reasoning rather than that of *Fuel Oil*," relying in part on the ruling of the Bankruptcy Court in *In re Longfellow*, 76 B.R. 338, 341 (S.D.N.Y.1987) (Brozman, J.). In explaining her order during an oral hearing on the matter of LAC's motion to intervene, however, Judge Brozman of the Bankruptcy Court disavowed her decision in *Longfellow*, in which she had followed *Marin* and found that there was an absolute right to intervene under section 1109(b). R. at 217. Judge Brozman acknowledged that in *Longfellow* she had failed

to differentiate between an adversary proceeding and a case. Section 1109 vests a party in interest with the right to be heard in a case, but says nothing of intervention in adversary proceedings.

The word "case" is a term of art, referring to the proceedings initiated by the filing of a Bankruptcy Petition by which a Debtor is reorganized or liquidated.

Although the Bankruptcy Code does not define a case, it plainly recognizes the distinction between a case and a proceeding in [Bankruptcy Code] Sections 301 and 303. Disputes within bankruptcy are of two sorts: contested matters, which concern the administration of the estate and are commenced by the filing of a motion, and adversary proceedings, which involve discreet disputes between parties and are commenced, like any civil litigation, with the filing of a Complaint which must be served on the Defendants. R. at 216–17 (citing L. King, *Collier on Bankruptcy*, ¶ 1109.02[4], at 1109–32 (15th ed. 1992); *Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283 (5th Cir.1985); Bankr.R. 7001, 9014).

held that *"Marin* is still good law," and found the analysis in *Marin* "persuasive." *Id.*

### 3. *Fuel Oil*

The Fifth Circuit in *Fuel Oil* acknowledged that "Congress intended § 1109(b) to carry forward to the current Bankruptcy Code the broad rights to appear and be heard granted to interested parties under the former bankruptcy code" section 206. *Id.* at 1286. It concluded that "[b]ased on the Bankruptcy Code alone, therefore, the argument that § 1109(b) creates an absolute right to intervene in adversary proceedings appears strong." *Id.*

In contrast to the Third Circuit's emphasis on the Bankruptcy Code and § 1109(b)'s derivation from former § 206 of chapter X, the Fifth Circuit went on to look at the following factors: (1) the distinctions drawn by Congress between "cases" in bankruptcy and the adversary proceedings related to them, *id.* at 1286; (2) the fact that Fed.R.Civ.P. 24(a)(1), which states that a "person may intervene 'if a statute of the United States confers an unconditional right' to do so, has been narrowly construed," and that courts have been reluctant to grant "unconditional statutory rights of intervention" to private parties, *id.* (citing, among other authorities, Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1906 (1972 & Supp.1984)); and (3) the language of Bankruptcy Rule 7024, which states that "Rule 24 F.R.Civ.P. applies in adversary proceedings." Bankr.R. 7024.

*Fuel Oil* also pointed to the advisory committee note to Bankruptcy Rule 7024 both to show that Congress was aware of the distinction between adversary proceedings and cases in the context of intervention and to show that Congress intended that courts differentiate cases and adver-

sary proceedings in determining a party's right to intervene in bankruptcy. The advisory committee note to Rule 7024 states:

A person may seek to intervene in the case under the Code or in an adversary proceeding relating to the case under the Code. Intervention in a case under the Code is governed by Rule 2018 and intervention in an adversary proceeding is governed by this rule. Intervention in a case and intervention in an adversary proceeding must be sought separately.

Bankr.R. 7024 advisory committee note.[8]

In the Fifth Circuit's view, these legislative and judicial signposts demonstrate that "Congress did not create an absolute statutory right to intervene in bankruptcy adversary proceedings through § 1109(b)," but instead "intended courts to apply Rule 24(a)(2) ... to applications to intervene in bankruptcy adversary proceedings under § 1109(b)." 762 F.2d at 1287. Far from using Rule 7024 to modify or enlarge a substantive right, the Fifth Circuit merely looked to 7024 to help it ascertain Congress's intent regarding the scope of § 1109(b). *See also* 9 *Collier on Bankruptcy* ¶ 7024.03 at 7024–4 (15th ed. 1993) (*Marin* interpretation of § 1109(b) "has been rejected by a number of courts" and view espoused by *Fuel Oil* regarding right to intervene under section 1109(b) "appears to be the better view, and is supported by the 1983 Advisory Committee Note to Bankruptcy Rule 7024").

In addition to Rule 7024, there are other indications that the 95th Congress, during the time it developed and passed the Bankruptcy Reform Act of 1978, when § 1109(b) was enacted, and thereafter, drew a distinction between bankruptcy cases and the adversary proceedings related to or arising under such cases. Thus, in considering abstention, the 95th Congress made the following observation regarding 11 U.S.C.

8. Other bankruptcy rules indicate that Congress was aware of a distinction between cases and adversary proceedings to be drawn with respect to intervention. Bankruptcy Rule 2018(a), the rule governing permissive intervention, states: "In a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter." The advisory committee note to Rule 2018 states that the rule "implements §§ 1109 and 1164 of the Code." The advisory committee note also states: "This rule does not apply in adversary proceedings. For intervention in adversary proceedings, see Rule 7024."

§ 305, the section that governs jurisdictional abstention in bankruptcy cases: "This section recognizes that there are cases in which it would be appropriate for the court to decline jurisdiction. Abstention under this section, however, is of jurisdiction over the entire case. Abstention from jurisdiction over a particular proceeding in a case is governed by proposed 28 U.S.C. § 1471(c)." S. 2266, 95th Cong., 1st Sess. § 305 (1977).[9] In attempting to reform the bankruptcy laws in 1978, the 95th Congress made other distinctions between case and adversary proceedings "in dealing with bankruptcy in the Code of Judiciary and Judicial Procedure," Title 28 of the United States Code. *In re George Rodman, Inc.,* 33 B.R. 348, 349 (Bankr.W.D.Okla.1983). Thus "[t]here are two separate sections dealing with venue. 28 U.S.C. § 1472 concerns '... a case under title 11 ...' and 28 U.S.C. § 1473 separately concerns '... a proceeding in or related to a case under title 11....' In 28 U.S.C. § 1475, the 95th Congress provided for transfer of both '... a case under title 11 or a proceeding arising under or related to such a case....'" *Id.* Furthermore, "[j]ury trials were provided for both '... in a case under title 11 or in a proceeding arising under title 11....' 28 U.S.C. § 1480(a)." *Id.; see also* H.R. P.L. 95–598 [8200], 95th Cong., 2d Sess. (1978), *reprinted in* 1978 U.S.C.C.A.N. [92 Stat.] 2549, 2687 (providing for transfer of cases and proceedings to new bankruptcy court system). Also, in 1977 the House Committee on the Judiciary, in its report accompanying and recommending passage of House Report 8200, the proposed bill to establish the new Bankruptcy Code, stated in its discussion of the administration of bankruptcy cases that: "In particular cases, a judge may, after reviewing the schedules of assets and liabilities that the debtor has filed, and various other information in the case, suggest to a dilatory trustee that he pursue a cause of action, for example to recover a preference or avoid a lien, or suggest that he initiate a proceeding to recover an asset of the estate held by a third party." H.R.Rep. No. 595, 95th Cong., 2d Sess. 90–

91, *reprinted in* 1978 U.S.C.A.N. 5963, 6052.

As the court in *Rodman* stated, and the Fifth Circuit in *Fuel Oil* agreed, these examples show that at the time Congress enacted § 1109 it "did separately consider bankruptcy cases and proceedings relating to them. The reason the Bankruptcy Code doesn't mention adversary proceedings is because it doesn't deal with them. They are matters appropriately considered in title 28, and the procedural rules." 33 B.R. at 349; *see Fuel Oil,* 762 F.2d at 1286. *Cf.* 123 Cong.Rec. 31026 (1977) (statement of Representative Edwards) (citing number of bankruptcy cases in 1976, and stating that "[m]oreover, within each bankruptcy case, several adversary proceedings and contested matters serve as mini-trials magnifying the significance of the 246,549 bankruptcy cases many-fold"); 1 *Collier on Bankruptcy* ¶ 1–03 at 1–23 to –24, 1–44 to –45 (15th ed. 1993) (noting that in proposed bills for Bankruptcy Code, House and Senate drew distinctions between cases and adversary proceedings related to cases).

Finally, Collier on Bankruptcy, upon which the Third Circuit in *Marin* relied in arriving at its interpretation of § 1109(b), *see* 689 F.2d at 457 ("the well-established Collier on Bankruptcy ... takes an absolutist view of Section 1109(b)"), now rejects the view espoused in *Marin*:

[I]f Congress meant for section 1109(b) to be so broadly construed it could have used more appropriate words to do so. Since at least 1973 the word "case" has taken on a very particular meaning and, in fact, has become a word of art. The 1973 Bankruptcy Rules made the distinction between "case" and "proceeding." "Case" is that which is commenced by the filing of a petition; it is the "whole ball of wax," the chapter 7, 9, 11, 12 or 13 case. Any disputed matter that arises during the pendency of the case is either an adversary proceeding or a contested matter. It is either commenced by the filing of a complaint, a motion or, in a few instances, an application. It is not

---

**9.** 28 U.S.C. §§ 1471–1482 never became effective pursuant to Pub.L. 95–598.

commenced by the filing of a petition. Congress was well aware, or certainly should have been well aware of the distinctive use of "case" and "proceeding" because of the existence of the Bankruptcy Rules even before Congress commenced hearings on the ... bankruptcy law revision in the 1970s. As a matter of fact, Congress itself gave cognizance to the distinction in sections 301–303 of the Bankruptcy Code. It is, thus, not so easily concluded that automatic intervention appropriately exists with respect to adversary proceedings.

5 *Collier on Bankruptcy* ¶ 1109.02 at 1109–33 to –34 (15th ed. 1993).

### 4. *Additional Considerations*

Even if it were determined that the legislative history as well as the terminology employed by Congress in enacting the bankruptcy laws, while casting some light on the interpretation of § 1109(b), were inconclusive, the Fifth Circuit's determination that the right to intervene in adversary proceedings is not absolute under § 1109(b) has several policy reasons to commend it.

First, the *Fuel Oil* approach

in no way restricts the broad, legitimate right to appear and be heard that § 1109(b) grants to parties in interest. These parties in interest ... may still intervene as of right under Rule 24(a)(2), Fed.R.Civ.P. Under this rule, a person may intervene as of right when the person 'claims an interest in the property or transaction which is the subject of the action,' and the person is 'so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest.'

762 F.2d at 1287 (quoting Fed.R.Civ.P. 24(a)(2)). Thus the Fifth Circuit's interpretation of creditors' rights to intervene in adversary proceedings commenced by the debtor under § 1109(b) addresses the concern expressed by the Third Circuit in *Marin* that limiting the scope of intervention under § 1109(b) may undermine "the usual expectation of parties in interest that they

will have a right to be heard ... by the tribunal adjudicating their interests." 689 F.2d at 457.

■ In addition, individual creditors like LAC are safeguarded by rights of participation and oversight in a bankruptcy case. These rights include the right to notice of any proposed compromise and settlement of a lawsuit involving the bankrupt estate. Bankr.R. 2002(a). Creditors are thereby afforded the opportunity to review the compromise and settlement and to object to it if it does not adequately protect their interests. A broad but not absolute right of intervention in adversary proceedings based on Rule 24 does not preclude creditors from appearing in bankruptcy adversary proceedings to monitor the progress of the bankruptcy case and make known to the bankruptcy court their views, positions and interests as to the compromise or settlement of an adversary proceeding entered into by the debtor. Moreover, in deciding whether to approve a compromise or settlement of an adversary proceeding, a bankruptcy court is compelled to keep in mind the best interests of both the estate *and* the creditors. *Cf.* 124 Cong.Rec. 34,003 (1978) (statement of Sen. DeConcini) (§ 1109(b) will "enable the bankruptcy court to evaluate all sides of a position and to determine the public interest").

Where an adversary proceeding is of significance to the estate, placing appropriate constraints on a creditor's right to intervene lessens the concern that the creditor's participation will compromise the debtor's ability, as a fiduciary to all parties in interest, to obtain a favorable outcome in the proceeding. In a similar vein, where a debtor in possession is involved, the Fifth Circuit's interpretation of § 1109(b)(1) protects the statutorily given authority of the trustee and debtor in possession to control the conduct of a litigation either in bankruptcy or in nonbankruptcy and to dispose of a litigation through compromise or settlement so as to avoid the risk of a complete loss of the estate; [10] and (2) limits the

---

**10.** It is undisputed that, upon confirmation of 995's Chapter 11 plan on July 20, 1989, 995

ceased being a debtor in possession and became a debtor. On appeal, however, the intervenor

ability of intervenors to impede or impair this authority of the trustee or the debtor in possession.

■ Only in those proceedings where the debtor or debtor in possession unjustifiably fails adequately to represent the interests of the creditors and other parties in interest is its authority forfeited and the creditor allowed to intervene to protect its interests. *Fuel Oil,* 762 F.2d at 1287; *see also In re STN Enterprises,* 779 F.2d 901, 904 (2d Cir.1985) (§ 1109(b) implies only qualified right for creditors' committee to initiate suit with approval of bankruptcy court when trustee or debtor in possession "unjustifiably failed to bring suit").

Finally, a qualified rather than an absolute right to intervene in adversary proceedings under § 1109(b) makes sense in the context of nonbankruptcy court litigation concerning the bankrupt estate. Under *Marin*'s interpretation of § 1109(b), "each individual creditor—perhaps hundreds of them—would be automatic parties to every adversary proceeding connected with the case." *Fuel Oil,* 762 F.2d at 1287. If the right to intervene in an adversary proceeding is absolute, such a right would not be limited to matters before the bankruptcy court; it is difficult to see how the same right would not extend to any nonbankruptcy fora in which the adversary proceeding is litigated. Allowing every creditor and other party in interest under § 1109(b) to intervene in a district court without distinctions among different types of creditors, great and small, would impede the court's ability to understand or to manage the proceeding effectively.

In response to this possibility, the Third Circuit in *Marin* noted that "the unqualified right of creditors and stockholders to intervene appears to have been the rule under section 206 for approximately 40 years," with little resulting confusion or disorder, "and the legislative history of section 1109(b) shows no dissatisfaction with it." 689 F.2d at 453. It added that the economic costs of intervention will deter most creditors from intervening in an ad-

versary proceeding save those who have the greatest financial stake in a particular proceeding. *Id.*

This response, however, proves unsatisfactory. First, Congress enacted the Bankruptcy Reform Act of 1978 in part because of the steady growth in the number and complexity of bankruptcy cases since the enactment of the former Bankruptcy Act containing section 206. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 2 (1978), 1978 U.S.C.C.A.N. 5788; 124 Cong.Rec. 28,258 (1978) (statement of Sen. DeConcini). Second, although an economic deterrent may at times exist against intervention by all creditors in adversary proceedings involving the estate, such a deterrent may not exist in any given case. There may be any number of creditors in a given case who, perhaps because they are pro se or seek to extract leverage in the case from the debtor, may have little to lose in intervening in most adversary proceedings commenced by the debtor.

In sum, the Court declines to follow the holding in *In re Neuman,* and finds persuasive the analysis contained in *Fuel Oil* as opposed to *Marin.* Accordingly, the order of the Bankruptcy Court denying appellant's motion to intervene under 11 U.S.C. § 1109(b) is affirmed.

### CONCLUSION

For the reasons set forth above, the November 16, 1992 order of the Bankruptcy Court is affirmed.

IT IS SO ORDERED.

---

appellants have not made any arguments differentiating between debtors and debtors in posses-

sion with respect to determining the applicability and scope of § 1109(b).