**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**


No. 95-30760


IN RE CAJUN ELECTRIC POWER COOPERATIVE, INC.,

                                        Debtor,


CAJUN ELECTRIC POWER COOPERATIVE, INC., ET AL.

                                        Appellants,

                    VERSUS


CENTRAL LOUISIANA ELECTRIC COMPANY, INC., ET AL.

                                        Appellees,


Appeal from the United States District Court
for the Middle District of Louisiana

November 20, 1995

Before REYNALDO G. GARZA, BARKSDALE and EMILIO M. GARZA, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Appellants appeal from the appointment of a trustee in a Chapter 11 bankruptcy.  For the reasons stated below, we vacate the appointment of a trustee and remand for further proceedings.


I.

BACKGROUND

This is an appeal from the district court's appointment of a

trustee for Cajun Electric Power Cooperative, Inc. ("Cajun"). The district court appointed a trustee because it found that conflicts of interest existed among Cajun's board members, and because it felt that the appointment of a trustee would be in the best interest of all parties.

Cajun's financial problems can be traced back to its ill-fated investment in Gulf States Utilities' River Bend Nuclear Power Facility ("River Bend"). Cajun borrowed at least $1.6 billion from the Rural Utilities Service ("RUS"), an agency of the federal government, to invest in River Bend. The investment went sour, and Cajun has since sued Gulf States Utilities on the grounds that it was fraudulently induced to invest in River Bend.

Cajun's financial problems came to a head when the Louisiana Public Service Commission ("LPSC") ordered Cajun to lower its rates. Because it could not meet its debt obligations under the lower rates, Cajun filed for bankruptcy under Chapter 11 the same day that the rate decrease went into effect.

The conflicts among Cajun's board members became apparent when the board had to decide whether to appeal the LPSC's order to lower Cajun's rates. This decision was made difficult by the fact that Cajun's board members were managers or board members of its twelve member companies, who bought all of their electricity from Cajun. If they voted to appeal the rate decrease, they would be attempting to raise the price of electricity charged to the member-customers for which they worked. On the other hand, if the prices were lowered, it would be more difficult for Cajun to pay its debt

2

obligations. Several board members resigned because of this conflict, but the board ultimately decided to appeal the rate decrease. The appeal, however, was not successful.

The RUS, along with some of Cajun's other creditors, moved for the appointment of a trustee. The district court granted this motion, finding that a trustee should be appointed because of the conflict of interest created by the fact that Cajun's board members owed duties of loyalty to Cajun, to Cajun's creditors, and to Cajun's member-customers. Cajun appeals from the appointment of a trustee.

## II.

### APPEALABILITY OF THE APPOINTMENT OF A TRUSTEE

We turn first to the issue of whether the appointment of a trustee is presently appealable. Because this is an appeal from a district court sitting in bankruptcy, our jurisdiction is governed by 28 U.S.C. § 1291 ("Section 1291"). Section 1291 provides that this Court has "jurisdiction of appeals from final decisions of the district courts. . . ." Thus, whether the district court's appointment of a trustee is appealable turns on whether it is viewed as a final order.

Normally, a final order is one that ends the litigation in the trial court. However, because of considerations unique to bankruptcy appeals—such as the protracted nature of bankruptcy proceedings and the large number of parties interested in them—courts have applied liberalized rules of finality for

3

bankruptcy appeals. The appellees, citing *Matter of Hawaii Corp.*,[1] argue that these liberalized rules apply only to appeals from a district court's review of a bankruptcy court's decision pursuant to 28 U.S.C. § 158(d) ("Section 158(d)"), not to appeals from a district court sitting in bankruptcy pursuant to Section 1291. Other circuits, however, have refused to follow *Matter of Hawaii Corp.* They "see no reason . . . for interpreting the word 'final' in [Section] 1291 differently from the way [they interpret] it in . . . Section 158(d)."[2] We too see no reason to apply different rules of finality for Section 1291 appeals, and will apply the same rules that we apply to Section 158(d) appeals.

Applying this liberalized concept of finality, we must now determine whether the appointment of a trustee in a Chapter 11 case is a final, appealable order. This is a question of first impression in this circuit. The only case in this circuit addressing the appealability of the appointment of a trustee, *In re Delta Services Industries*,[3] is inapplicable to the case at bar. *In re Delta Services Industries* held that the appointment of an interim trustee in a Chapter 7 case is not immediately appealable. However, that case involved an interim trustee, the appointment of which "constitutes only a preliminary step in [a debtor's]

---

[1]796 F.2d 1139, 1141-42 (9th Cir. 1986).

[2]*Tringali v. Hathaway Machinery Co.*, 796 F.2d 553, 558 (1st Cir. 1986). *Accord A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1009 (4th Cir.), *cert. denied*, 479 U.S. 876 (1986); *In re Amatex Corp.*, 755 F.2d 1034, 1039 (3d Cir. 1985); *In re UNR Industries, Inc.*, 725 F.2d 1111, 1115 (7th Cir. 1984).

[3]782 F.2d 1267 (5th Cir. 1986).

4

liquidation."[4]  The case at bar, on the other hand, involves the appointment of a permanent trustee who is to negotiate a plan of reorganization.

Four other circuits have allowed appeals from the appointment of a trustee.[5]  Of those four, the First Circuit gave the most convincing rationale for asserting appellate jurisdiction.  First, it noted that the appointment of a trustee in a Chapter 11 case is "a decision of a significant and discrete dispute."[6]  It then went on to state that:

> It seems plain that the decision of an appeal from the court's order [appointing a trustee] could not be meaningfully postponed until the end of the entire Chapter 11 proceeding.  If an appeal were postponed until a plan of reorganization were confirmed, there would be no satisfactory way to vindicate the [debtor's rights].[7]

This rationale is well-reasoned.  Without an immediate appeal, a debtor would have no effective relief from an erroneous appointment.  The only option would be an appeal after a plan of reorganization was confirmed.  By that time, the debtor would already have been out of possession for months, if not years, and

---

[4]*Id.* at 1271.

[5]*See In re Plaza de Diego Shopping Center Inc.*, 911 F.2d 820 (1st Cir. 1990); *In re Sharon Steel Corp.*, 871 F.2d 1217 (3d Cir. 1989); *In re Oklahoma Refining Co.*, 838 F.2d 1133 (10th Cir. 1988); *Dalkon Shield Claimants v. A.H. Robins Co.*, 828 F.2d 239 (4th Cir. 1987).  *Cf. In re Reid*, 773 F.2d 945 (7th Cir. 1985)(holding that the appointment of an interim trustee in a Chapter 11 case is immediately appealable). *But see Matter of Cash Currency Exchange, Inc.*, 762 F.2d 542, 546 (7th Cir.), *cert. denied*, 474 U.S. 904 (1985)(holding that the appointment of a trustee in a Chapter 11 case is not immediately appealable).

[6]*In re Plaza de Diego Shopping Center, Inc.*, 911 F.2d at 826.

[7]*Id.*

the only relief would be to vacate the plan of reorganization and start new negotiations with creditors. An immediate appeal is a better option. Consequently, we hold that the appointment of a trustee in a Chapter 11 case is an immediately appealable final order.

## III.

### STANDING

The appellees challenge the appellants' standing to bring this appeal. Only one appellee, Central Louisiana Electric Company, Inc. ("CLECO"), actually challenges Cajun's standing.[8] CLECO argues that Cajun lacks standing because it is "hopelessly insolvent." To have standing to appeal a bankruptcy order, a party must show that it was "directly and adversely affected pecuniarily by" the order, or that the order diminished its property, increased its burdens or impaired its rights.[9] CLECO argues that Cajun is so insolvent that it lacks any hope of return under any reorganization, and is thus not adversely affected by the appointment of a trustee. CLECO's argument is without merit. When the trustee was appointed, Cajun lost all the rights it had as a debtor-in-possession, including the right to operate its business.

---

[8]The other appellees merely challenge the other appellants' standing; they do not challenge Cajun's standing.

[9]*In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir. 1987). *See Rohm & Hass Texas, Inc. v. Ortiz Bros. Insulation, Inc.*, 32 F.3d 205, 208 n. 18 (5th Cir. 1994)(noting that, to appeal a bankruptcy order, a party must show that it was aggrieved by that order).

Clearly, it was aggrieved by losing the right to run itself. Accordingly, we hold that Cajun has standing to prosecute this appeal.

Although the appellees questioned the standing of the other appellants, we will only address the issue of whether appellant Cajun has standing. Because we hold that Cajun has standing, we need not consider whether the other parties have standing. The other parties raise the same issue on appeal—the propriety of the appointment of the trustee—as Cajun. Thus, whether they have standing to prosecute this appeal is of no consequence; because Cajun has standing, we can decide whether the district court erred in appointing a trustee even if the other appellants do not.

IV.

THE APPOINTMENT OF A TRUSTEE

We now turn to the sole substantive issue in this appeal, whether the district court erred in appointing a trustee. The district court justified its appointment on two grounds: First, it held that there was cause to appoint a trustee under 11 U.S.C. § 1104(a)(1); and second, it held that the appointment of a trustee was in the best interest of the parties under 11 U.S.C. §1104(a)(2). The district court's appointment of a trustee is reviewable only for abuse of discretion.[10] Our review of the record convinces us that the district court abused its discretion in

---

[10]*In re Sharon Steel Corp.*, 871 F.2d at 1225-26; *In re Dalkon Shield Claimants*, 828 F.2d at 242.

7

appointing a trustee.

We will first review whether the appointment of the trustee can be justified under 11 U.S.C. § 1104(a)(1) ("Section 1104(a)(1)"). Section 1104(a)(1) provides that a court shall order the appointment of a trustee—

> for cause, including fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause. . . .

The appointment of a trustee pursuant to Section 1104(a)(1) is an extraordinary remedy, and there is a strong presumption that the debtor should be permitted to remain in possession absent a showing of need for the appointment of a trustee.[11] The parties moving for the appointment of a trustee have the burden of proof, which they must meet by clear and convincing evidence.[12]

The district court gave several reasons for appointing a trustee,[13] but they all stemmed from one conflict of interest: Cajun's inherent conflict between the interests of its member-customers, who want low rates, and those of its creditors, who want

---

[11] 5 LAWRENCE KING, COLLIER ON BANKRUPTCY § 1104.01[7][b] (15th ed. 1995).

[12] *Id.*

[13] The district court gave the following examples of conflicts: (1) a dispute over the appeal of a Louisiana Public Service Commission order setting rates; (2) failure to collect monies owed by its member-customers; (3) failure to allow members access to information and to participate in possible sales of Cajun's assets; (4) failure to take a position in litigation between the LPSC and the RUS over which entity had the power to regulate its rates; (5) the interests of some of Cajun's members in purchasing some of its assets; and (6) the existence and nature of the all-requirements contracts between Cajun and its member-customers.

8

to raise rates.[14]  The district court gave several reasons for appointing a trustee,[15] but they all stemmed from one conflict of interest: Cajun's inherent conflict between the interests of its member-customers, who want low rates, and those of its creditors, who want to raise rates.  However, because this inherent conflict results from Cajun's organizational structure—a structure that Congress encouraged it to adopt—the conflict is insufficient to justify the appointment of a trustee.

Congress intended that utilities which borrowed from the RUS

---

[14]The dissent claims that two of the reasons given by the district court, the failure to collect monies owed by member-customers and the failure to allow members access to information and to participate in possible sales of Cajun's assets, show conflicts not present in a healthy cooperative.  However, we do not think that these reasons constitute sufficient cause to justify the appointment of a trustee under Section 1104(a)(1).  Cajun's accounts receivable owed by its member-customers were no greater during the bankruptcy than they were before the bankruptcy.  Thus, Cajun is simply operating as it did before it declared bankruptcy; it is not attempting to keep money from its creditors by failing to collect accounts receivable from member-customers.  Similarly, Cajun's failure to share information about possible asset sales with CLECO or Teche Electric Cooperative, Inc. ("Teche") do not constitute cause for the appointment of a trustee.  CLECO is attempting to acquire Cajun's members, and Teche is effectively controlled by CLECO.  A healthy cooperative is not obligated to share information about potential sales of its assets with companies that are seeking to acquire its members.

[15]The district court gave the following examples of conflicts: (1) a dispute over the appeal of a Louisiana Public Service Commission order setting rates; (2) failure to collect monies owed by its member-customers; (3) failure to allow members access to information and to participate in possible sales of Cajun's assets; (4) failure to take a position in litigation between the LPSC and the RUS over which entity had the power to regulate its rates; (5) the interests of some of Cajun's members in purchasing some of its assets; and (6) the existence and nature of the all-requirements contracts between Cajun and its member-customers.

be cooperatives. The Rural Electrification Act of 1936[16] is set up to favor cooperatives. Specifically, it provides that in making loans, the Administrator "shall give preference to . . . cooperative, nonprofit and limited dividend associations. . . ."[17] In fact, according to the parties' stipulation in this case, all electric generation and transmission companies receiving loans from the RUS are organized as cooperatives. The fact that Congress and the RUS encouraged—if not required—Cajun to organize itself as a cooperative leads us to believe that any conflict inherently arising from Cajun's organization as a cooperative is insufficient to justify the appointment of a trustee. Further, holding that these inherent conflicts constitute cause for appointing a trustee would create a *per se* rule permitting the appointment of a trustee in any case involving a cooperative. Nothing in the Bankruptcy Code or its legislative history indicates that Congress intended such a *per se* rule. In fact, when Congress wanted to create special rules for certain types of businesses, it did so.[18] Congress did not create such a *per se* rule, and we refuse to create one by judicial fiat.

Because all of the conflicts found by the district court arose from Cajun's organizational structure, we hold that the district

---

[16]7 U.S.C. § 901 *et seq.*

[17]7 U.S.C. § 904.

[18]For example, Congress provided specific rules in cases involving "a single asset real estate business," *see* 7 U.S.C. §§ 101(51B), 363(d)(3), a "small business," *see* 7 U.S.C. §§ 101(51C), 1102(a)(3), 1121(3), 1125(f), and a "family farmer," *see* 7 U.S.C. § 101(18), among others.

court erred in finding that cause existed to appoint a trustee.

Appellees cite *In re Colorado-Ute*[19] for the proposition that the conflicts inherent in any cooperative justify the appointment of a trustee. That case, however, is distinguishable. In *Colorado-Ute*, the district court found that the debtor had committed a number of bad acts, including making transfers on the eve of bankruptcy in an effort to destroy the RUS' security interest, and that the debtor had an incompetent board and management. Cajun, on the other hand, has committed no such bad acts, and the district court did not find its management or board incompetent. Thus, the factors justifying the appointment of a trustee in *Colorado-Ute* are not present in the instant case.[20]

The district court also justified its appointment of a trustee upon Section 1104(a)(2). That section provides that the district court shall appoint a trustee when such an appointment is in the best interests of all the parties. The district court found that the appointment of a trustee was in the best interests of the parties because of the conflicts discussed above. However, just as such conflicts do not justify the appointment of a trustee for cause pursuant to Section 1104(a)(1), they also do not make the appointment of a trustee in the best interests of the parties under

---

[19]120 B.R. 164 (Bankr. D. Colo. 1990).

[20]The dissent claims that we would never affirm the appointment of a trustee in a case involving a cooperative where the cause for appointment can be traced back to a cooperative's inherent structure. We disagree. In a case like *Colorado-Ute*, where a cooperative had actually engaged in bad acts, we would affirm the appointment of a trustee.

11

Section 1104(a)(2).[21]  Further, the fact that the debtor and several creditors are appealing the trustee's appointment is evidence that the appointment was not in their best interest.[22]  Thus, we hold that the district court erred in finding that the appointment of a trustee was in the parties' best interests.

In closing, we note that our vacation of the appointment of the trustee does not leave the parties' best interests unprotected. The bankruptcy court, even with the debtor in possession, can still enter orders in the reorganization plan to be adopted and the lack of the trustee is not an impediment to this inherent power of the bankruptcy court.

IV.

CONCLUSION

Because the district court erred in appointing a trustee, we VACATE the appointment of the trustee and REMAND this case for further proceedings.

---

[21]*See* COLLIER ON BANKRUPTCY, *supra* note 11, at § 1104.01[7][d] (noting that "there are few situations . . . when grounds will exist for the appointment of a trustee under [Section 1104(a)(2)] although 'cause' for such appointment will not exist under [Section 1104(a)(1)].").

[22]*See* 5 COLLIER ON BANKRUPTCY, *supra* note 11, at § 1104.01[7][d] (noting that "[i]n any case in which equity security holders or other ownership interests support the debtor's current management, the court should refrain from appointing a trustee under [Section 1104(a)(2)]").

EMILIO M. GARZA, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority opinion except as to Part IV and the ultimate judgment. I do not agree with the majority that affirming the district court's order would create a "per se rule" under which any cooperative seeking Chapter 11 protection would be automatically subject to the appointment of a trustee. In my view the conflicts present in this case provide sufficient "cause" to support the district court's appointment of a trustee under § 1104(a)(1). *See* maj. op. at 8 n.13 (detailing Cajun Electric's conflicts of interest). The conflicts present in this case go beyond the "inherent" conflicts under which all healthy cooperatives operate.[23] Presumably, healthy cooperatives do not fail to collect monies owed by member-customers or attempt to deny member-customers access to information. Nor do members in healthy cooperatives consider strategies which seem designed to break-up and scavenge the assets of the debtor. *See* Joint Stipulation at 4 ¶ 15 ("Some members . . . have expressed an interest in purchasing Cajun's assets, either by themselves alone or by forming a venture with one or more others."). Once cooperative members begin working at cross-purposes, to the extent Cajun's members have, the appointment of a trustee may be the only effective way to pursue

---

The majority also errs in conflating the conflicts "inherent" in any cooperative organization with those "arising from" inherent conflicts. *See* maj. op. at 8-9. In my opinion, the majority would shield a cooperative from trustee appointment, no matter how egregious its internal conflicts were, so long as the conflicts could be traced back to the cooperative structure.

reorganization.  *See In re Colorado-Ute Electric Ass'n, Inc.*, 120 B.R. 164, 176 (D. Colo. 1990) (holding the appointment of a trustee proper where court could not envision a way for current management to resolve conflicts).  As the district court recognized, this is a large and messy bankruptcy that promises to get worse without an disinterested administrator at the helm.  Accordingly, I respectfully dissent from Part IV of the majority opinion, and would affirm the district court's appointment of a trustee.