**SOUTHERN PACIFIC TRANSPORTATION COMPANY and St. Louis Southwestern Railway Company, Plaintiffs–Appellants,**

v.

**VOLUNTARY PURCHASING GROUPS, INC., Debtor–Appellee.**

No. 3:98–CV–051.

United States District Court,
E.D. Texas,
Paris Division.

Dec. 11, 1998.

David W. Elrod, Michael Calvin Wright, Calhoun & Stacy, Mark A. Calhoun, Calhoun & Stacy, Dallas, TX, for Southern Pacific Transportation Company.

David W. Elrod, Elizabeth Reding Gambrell, Mark A. Calhoun, Calhoun & Stacy, Dallas, TX, for St. Louis Southwestern Railway Co.

James Patrick Kelley, Ireland Carroll & Kelley, Tyler, TX for Voluntary Purchasing Groups Inc.

Hal F. Morris, Attorney General's Office, Collections Division, Austin, TX, for Texas Natural Resource Conservation Commission and Natural Resource Damage Trustees.

Gregory Getty Hesse, Lynnette Randee Warman, Jenkens & Gilchrist, Dallas, TX, for Official Unsecured Creditor's Committee of Voluntary Purchasing Groups Inc.

*ORDER DENYING MOTION TO LIMIT THE FILING OF ONE APPELLATE BRIEF JOINTLY BY THE DEBTOR AND UNSECURED CREDITORS' COMMITTEE*

SCHELL, Chief Judge.

This matter is before the court on the "Motion Requesting That The Debtor and The Unsecured Creditors' Committee Be Limited to Filing One 50 Page Appellee's Brief Between Them" (Dkt. # 19), filed by Plaintiffs–Appellants Southern Pacific Transportation Company and St. Louis Southwestern Railway Company (collectively

"the Railroads") on September 15, 1998.[1] The Unsecured Creditors' Committee ("Committee") filed a brief in opposition to the motion on September 10, 1998, and the Railroads filed a reply to the Committee's response on September 14, 1998. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a). For the reasons outlined below, the court is of the opinion that the Railroads' motion should be DENIED.

## DISCUSSION

Through the instant motion, the Railroads ask the court to enter an order prohibiting the Committee from filing a separate brief in this bankruptcy appeal. They argue that such an order is appropriate because the Committee's interests are identical to those of Voluntary Purchasing Groups, Inc., ("VPG") the Debtor–Appellee in this case, and are adequately represented by VPG's appellate brief. The Railroads contend that, given the mutuality of interests between these two parties, allowing the Committee to file an appellate brief would be tantamount to permitting VPG to file two briefs. Such an inequitable result, it is argued, would "heavily burden" the Railroads' ability to prosecute their appeal. In response, the Committee argues that 11 U.S.C. § 1109(b) of the Bankruptcy Code gives a creditors' committee the right to appear and be heard on any issue in a case under Chapter 11. Moreover, the Committee contends that the interests of the more than 2,000 unsecured creditors that it represents are directly affected by this appeal and will be harmed if they are not allowed to participate. Finally, the Committee argues that because the Railroads have already filed an appellate brief that addresses the substance of the Committee's brief, the Railroads will not be prejudiced if the court permits the Committee's brief to be filed.

In their reply, the Railroads add the assertion that the Committee lacks standing to file an appellate brief. Specifically, they argue that while 11 U.S.C. § 1109(b) makes the Committee a "party in interest" in the underlying bankruptcy proceeding, it does not give the Committee standing to oppose the Railroads' appeal of an order stemming from that proceeding. The Railroads assert that the Committee fully exercised its limited right to "appear and be heard" under § 1109(b) when it participated in the confirmation hearing held before the bankruptcy court. They insist that because the Committee is not a proponent of VPG's Plan of Reorganization ("Plan"), because it withdrew all of its objections to that Plan, and because it did not appeal the bankruptcy court's order confirming the Plan, the Committee is not a party in interest for purposes of this appeal.

Although the issue of standing "is the threshold question in every federal case," *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), it is not clear that appellate standing is the proper inquiry for the court in this case. Such issues typically arise only in the context of a party's standing to *take* an appeal (i.e., the right to be an appellant), not one's standing to oppose an appeal (i.e., the right to be an appellee). Indeed, courts are rarely (if ever) called upon to decide whether a party has standing to be an appellee.[2] Nevertheless, given the absence of case law directly on point and the fact that the Bankruptcy Code does not specifically address this issue, the court will first consider the question of the Committee's appellate standing before turning to an analysis of whether the Committee has the right to appear and be heard in a bankruptcy appeal under § 1109(b).

### A. *Appellate Standing in Bankruptcy Cases*

■■■ The standard for determining the presence of appellate standing in the bank-

---

1. Although this motion was mailed to opposing counsel on or about September 4, 1998, it was not filed with the court until September 15, 1998.

2. The Railroads' own motion illustrates the awkwardness of trying to apply the doctrine of standing here. After arguing that the Committee lacks standing, for example, the Railroads do not ask the court to bar the Committee's appellate participation altogether. *See* Railroads' Reply Brief at 4. Instead, they only ask the court to limit the Committee to filing an appellee's brief jointly with VPG. Obviously it would be inconsistent for the court to allow a party to join in the filing of an appellee's brief if that party lacks standing to participate in the appeal.

ruptcy context differs from a constitutional standing analysis under Article III. *See Rohm & Hass Texas, Inc. v. Ortiz Bros. Insulation, Inc.*, 32 F.3d 205, 210 n. 18 (5th Cir.1994). Standing to appeal an order of a bankruptcy court is governed by the "person aggrieved" test, which requires a showing that one was aggrieved by the order being challenged. *See id.; Cajun Elec. Power Coop., Inc. v. Central La. Elec. Co., Inc.*, 69 F.3d 746, 749 (5th Cir.), withdrawn in part, 74 F.3d 599 (5th Cir.1996); *In re CFLC, Inc.*, 89 F.3d 673, 675 (9th Cir.1996); *In re Andreuccetti*, 975 F.2d 413, 416 (7th Cir.1992); *International Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 747 (2d Cir. 1991); *In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir.1987). To be a person aggrieved, "a party must show that it was 'directly and adversely affected pecuniarily by' the order, or that the order diminished its property, increased its burdens or impaired its rights." *Cajun Elec. Power Coop., Inc.*, 69 F.3d at 749 (quoting *In re San Juan Hotel*, 809 F.2d at 154). Additionally, to qualify as a person aggrieved some courts require attendance at the bankruptcy court's hearing on the matter addressed in the order from which an appeal is sought. *See, e.g., In re Weston*, 18 F.3d 860, 864 (10th Cir.1994).

■ Applying these standards to the case at hand, the court concludes that the Committee qualifies as a "person aggrieved." To begin with, it appears that the pecuniary interests of the Committee's members are adversely affected by entry of the order confirming VPG's Plan. That Plan decrees a fixed financial recovery for the Committee's members that is less than the amount actually owed to them by VPG. In approving that Plan, therefore, the bankruptcy court's order of confirmation has the effect of directly and adversely affecting the financial interests of the Committee's members. The Railroads do not suggest otherwise, nor do they argue that the Committee's members have no chance of recovery under VPG's Plan. They do argue that the Committee's ultimate endorsement of VPG's Plan precludes its participation in this appeal. However, the person aggrieved test asks only whether a party's pecuniary interests are adversely affected, not whether and to what degree a party may be content with the ultimate outcome.

The court also finds relevant the fact that rather than being a disinterested bystander at the bankruptcy court's confirmation hearing, the Committee fully participated in that proceeding and had a stake in the outcome. According to the Railroads, the Committee's participation in the confirmation hearing included the presentation of evidence, the calling and examination of witnesses, and the filing of objections to VPG's Plan. *See* Railroads' Motion at 2. No evidence before the court suggests that anyone objected to the Committee's participation in that proceeding or challenged its standing to appear and be heard there.[3] Under these circumstances, it seems clear that the Committee could have appealed the confirmation order itself had it been so inclined. The Railroads implicitly acknowledge as much when, without ever suggesting that the Committee would have lacked standing to appeal the confirmation order, they cite the Committee's failure to do so as a reason for barring it from filing a brief in this appeal. *See* Railroads' Reply Brief at 2. In any event, the court discerns no principled reason for denying appellate standing to a party in interest that fully participated in the underlying bankruptcy proceeding, nor have the Railroads cited any cases that compel a contrary conclusion.[4]

---

3. Indeed, the Committee had a right to be notified of and to participate in the confirmation hearing under the Bankruptcy Code. *See* Federal Rules of Bankruptcy Procedure, Rules 2002(b)(1), 2002(i), & 3020(b)(1).

4. The Railroads cite *In re Neuman*, 124 B.R. 155, 157 (S.D.N.Y.1991), for the proposition that a party that has standing to be heard on an issue before the bankruptcy court may nonetheless lack standing to be heard in the appeal of an order entered on such issue. Because *Neuman* is so readily distinguishable from the case at hand, however, that case provides little insight. In *Neuman*, a creditor was appealing a bankruptcy court order that denied that creditor the right to intervene in adversary proceedings initiated against various third parties by the Chapter 11 Trustee. When several parties filed a joint appellate brief in opposition to the creditor's appeal, the creditor sought to have the appellate brief excluded because those parties had already reached a settlement agreement with the Trustee

While not directly on point, *In re General Store of Beverly Hills,* 11 B.R. 539 (9th Cir. BAP 1981), provides some support for the position that the Committee is not precluded from participating in this appeal due to a lack of standing. In that case, the Bankruptcy Appellate Panel of the Ninth Circuit held: "Although it is not clear that a creditor's committee as an entity has standing to bring an appeal, the standing of the individual creditors provides a sufficient basis to permit the appeal." *Id.* at 541. That court thus held that irrespective of whether a creditor's committee has its own independent standing to appeal, such committee's have standing to appeal on behalf of the creditors they represent. *See also In re Elkins Energy Corporation,* 7 B.R. 971, 973 n. 4 (W.D.Va.1980) (observing that a creditor's committee could have brought an appeal on behalf of its members to challenge an interim award of attorney's fees); *Unsecured Creditors Committee v. Leavitt Structural Tubing Co.,* 55 B.R. 710, 712 (N.D.Ill.1985) (holding that committee of unsecured creditors could not appeal bankruptcy court's order where all of its members who had standing to appeal did not wish to appeal and had rejected the committee's representation).

Therefore, to the extent that this case is properly analyzed under principles of appellate standing, the court finds that the Committee is a person aggrieved and has standing to participate in this appeal, even if in doing so it assumes the role of an appellee rather than an appellant.[5] The court now turns to an examination of the right to appear and be heard under the Bankruptcy Code.

## B. *Right to Appear and Be Heard under 11 U.S.C. § 1109(b)*

Although the Bankruptcy Code does not expressly address the issue of appellate "standing," § 1109(b) does provide some guidance. That provision, which governs the right to be heard in bankruptcy cases arising under Chapter 11, states: "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and *may appear and be heard* on any issue in a case under this chapter." 11 U.S.C. § 1109(b) (emphasis added). The plain language of that provision gives the Committee an expansive right of participation in the resolution of issues arising in bankruptcy cases.[6] Because the questions raised in this appeal obviously qualify as "issues" in this case, and because this case does not cease being a "case under Chapter 11" merely because appellate jurisdiction has been invoked, there is no apparent reason why the Committee should not be "heard" in this appeal under § 1109(b). Nothing in that provision, for example, suggests that its broad right to

and would no longer be participating in the continued litigation. *See id.* at 157 n. 2. Under those circumstances, the district court found that those parties had "no interest in the appeal of the intervention order" and refused to consider the portion of their appellate brief that addressed the matter. *See id.* Unlike the circumstance in *Neuman,* the Committee in this case does have an interest in the appeal and a continuing stake in the outcome of the bankruptcy court proceedings.

**5.** Although the Committee may not be an "appellee" in the traditional sense that it is the party against whom an appeal is taken, it is an "appellee" in the broader sense that it is a "party who has an interest adverse to setting aside or reversing the judgment." Black's Law Dictionary 98 (6th ed.1991). And while the notion of having more than one appellee may seem foreign in most civil or criminal trials, it is not so unusual in the bankruptcy context. As one commentator has noted: "There may exist more than one appellant and appellee to a bankruptcy appeal because bankruptcy cases and proceedings involve multiple parties." 6 William J. Norton, Jr., Norton Bankruptcy Law and Practice 2d § 148.47 (1997).

**6.** Federal courts and leading commentators have taken the position that § 1109(b) is to be interpreted broadly in favor of giving parties in interest an opportunity to appear and be heard in proceedings affecting their interests. *See, e.g., In re Bumper Sales, Inc.,* 907 F.2d 1430, 1433 (4th Cir.1990); *In re Amatex,* 755 F.2d 1034, 1042 (3d Cir.1985); 5 Lawrence P. King, Collier on Bankruptcy ¶ 1109.02 (15th ed.1996). *See also Fuel Oil Supply & Terminaling Co. v. Gulf Oil Corp.,* 762 F.2d 1283, 1286 (5th Cir.1985) (observing that "Congress intended § 1109(b) to carry forward to the Bankruptcy Code the broad rights to appear and be heard under the former Bankruptcy Code").

appear and be heard is inapplicable to proceedings held before an appellate court.

■ This point is particularly significant when one notes that the provision immediately preceding § 1109(b) does expressly restrict a party's appellate rights. After granting the Securities and Exchange Commission ("SEC") the same right to appear and be heard that parties in interest enjoy under § 1109(b), § 1109(a) specifically denies the SEC the right to take an appeal. *See* 11 U.S.C. § 1109(a). Given that Congress proved itself capable of limiting a party's appellate rights under § 1109(a), one might reasonably conclude that the absence of such a limitation in § 1109(b) reflects an intent to not proscribe the appellate rights of parties in interest. In other words, had the drafters of § 1109(b) intended that provision to prohibit parties in interest from appearing and being heard at the appellate stage of a Chapter 11 case, they very easily could have said so explicitly. Indeed, it is difficult to believe that Congress intended to invoke by omission in § 1109(b) what it had included by express language in § 1109(a). That would be inconsistent with the rule that "[w]hen the legislature has carefully employed a term in one section of a statute and has excluded it in another, it should not be implied where excluded." *Bott v. American Hydrocarbon Corp.*, 458 F.2d 229, 233 (5th Cir.1972). The absence of qualifying language in § 1109(b), therefore, suggests that the right to appear and be heard in bankruptcy cases extends to both trial and appellate court proceedings.

The legislative history of § 1109 also provides some support for the notion that Congress did not intend to curtail the appellate participation of parties in interest. For example, the House Report that accompanies § 1109 states: "[Section 1109(a)], following current law, denies the right of appeal to the Securities and Exchange Commission. *It does not, however, prevent the Commission from joining or participating in an appeal taken by a true party in interest.* The Commission is merely prevented from initiating the appeal in any capacity." HR Rep. No. 595, 95th Cong. 1st Sess. 404 (1977) (emphasis added). If a non-party in interest such as the SEC can participate in an appeal taken

by a true party in interest, then it stands to reason that a true party in interest should also be able to participate in an appeal taken by another true party in interest. When coupled with the plain language of § 1109(b) and its broad grant of authority to appear and be heard, this legislative history undermines the argument that the Committee's right to appear and be heard in this case evaporated when appellate jurisdiction was invoked.

Given the absence of further illumination from the Bankruptcy Code and the lack of binding authority to the contrary, the court finds that § 1109(b) gives the Committee the right to participate in an appeal of the bankruptcy court's confirmation order under the circumstances of this case. As previously noted, the Committee fully participated in the confirmation hearing before the bankruptcy court and had a clear right to do so under the Bankruptcy Code. The court is aware of no reason why the Committee cannot continue to exercise its right to appear and be heard now that the bankruptcy court's confirmation order is being challenged on appeal. On the contrary, the Committee's attempt to exercise that right by filing an appellee's brief is consistent with § 1109(b).

CONCLUSION

For the foregoing reasons, the court concludes that the Railroads' "Motion Requesting That The Debtor and The Unsecured Creditors' Committee Be Limited to Filing One 50 Page Appellee's Brief Between Them" should be DENIED. It is so ORDERED.