# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 13, 2024

Lyle W. Cayce
Clerk

————————

No. 22-30539

————————

In the Matter of Roman Catholic Church of the Archdiocese of New Orleans

*Debtor,*

James Adams; Jackie Berthelot; Theodore Jackson; Eric Johnson,

*Appellants,*

*versus*

Roman Catholic Church of the Archdiocese of New Orleans,

*Appellee.*

————————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:22-CV-1738

————————————————————————

Before King, Jones, and Oldham, *Circuit Judges.*

Edith H. Jones, *Circuit Judge*:

Appellants are former members of the Official Committee of Unsecured Creditors ("Committee"), appointed as part of the Chapter 11 bankruptcy proceedings initiated by the Roman Catholic Archdiocese of New

No. 22-30539

Orleans ("Archdiocese"). Appellants contend that their removal from the Committee by the bankruptcy court was unlawful, and that the district court erred in denying their motion to vacate the judgment because the district judge who was originally assigned their appeal should have recused himself earlier. We conclude that the district court did not err in declining to vacate the judgment, and the Appellants lack standing under Article III to prosecute this appeal. AFFIRMED.

## BACKGROUND

The Archdiocese sought Chapter 11 bankruptcy relief on May 1, 2020, "largely in response to numerous lawsuits brought against it in state court alleging sexual abuse by priests or lay persons employed or supervised by the Archdiocese and complicity of the Archdiocese in that abuse."[1] About three weeks afterward, the United States Trustee ("Trustee") appointed the Committee. *Id.* at 805. At the time of the relevant events in this case, the Committee was composed of six of the more than 450 abuse claimants. *Id.* The Committee, as a single unit and with the bankruptcy court's approval, is represented by the law firms of Locke Lord LLP and Pachulski Stang Ziehl & Jones LLP. *Id.* But individual members of the committee retained their respective state-court counsel to advise them on their individual claims against the Archdiocese and its bankruptcy estate and to assist them in

---

[1] *In re Roman Cath. Church of Archdiocese of New Orleans*, 678 F. Supp. 3d 797, 804 (E.D. La. 2023) (footnote omitted) [hereinafter "*Trahant Ashe Opinion*"]. This opinion, which is integrally related to this case but is not the subject of this appeal, involves the motions for rehearing and motions to vacate filed by the Appellants' attorney, Mr. Trahant, as they relate to the bankruptcy court's sanction against him. In that opinion, Judge Ashe denied Trahant's motions for rehearing and motion to vacate, but withdrew Judge Guidry's March 27, 2023, opinion that affirmed the bankruptcy court.

fulfilling their duties as Committee members. *Id.* Until June 7, 2022, Richard C. Trahant served as counsel or co-counsel to four of the six individual members of the Committee—the four Appellants in this case. *In re Roman Cath. Church of Archdiocese of New Orleans*, 652 B.R. 138, 145–46 (E.D. La. 2023) [hereinafter "*Adams Ashe Opinion*"].

Because of the sensitive nature of the tort claims at the heart of the Archdiocese's bankruptcy, in August 2020,[2] the bankruptcy court adopted a protective order negotiated by the Archdiocese and the Committee governing the use and disclosure of confidential materials. *Trahant Ashe Opinion*, 678 F. Supp 3d. at 806. In December 2021, the Archdiocese produced certain materials it designated as confidential. These included documents related to the Archdiocese's Internal Review Board's evaluation of decades-old abuse allegations against a specific priest who had neither been included on the Archdiocese's previously published "Credibly Accused List" nor named in a proof of claim filed in the bankruptcy case. *Adams Ashe Opinion*, 652 B.R. at 143. Within days of receiving this information, Trahant, who specializes in litigating clergy sexual abuse cases, sent a text message to his cousin, the principal of a high school where the priest worked. *Trahant Ashe Opinion*, 678 F. Supp 3d. at 807–08. Trahant's text message mentioned the priest's name. Trahant later admitted that he did so to ensure that his cousin would infer that the priest had been accused of sexual abuse, and to ensure that the priest would not be allowed to return to work at the high school. *Id.* at 808. Trahant had further conversations with his cousin in January 2022, during which he disclosed the nature of the allegations against the priest, which he had learned about through the confidential documents produced by the Archdiocese. *Id.* Thus, Trahant's awareness of the

---

[2] The protective order has been amended as needed but remained in place as of June 2023. *Trahant Ashe Opinion*, 678 F. Supp 3d. at 806.

allegations against the priest was entirely a product of his representation of the Appellants—a status that gave him access to confidential documents in a sensitive legal proceeding.

The day after Trahant first texted his cousin, Trahant emailed a journalist, listing the priest's name in the subject line, identifying the priest's place of employment in the body, and urging the journalist to "keep him on your radar." *Id.* at 808. Less than three weeks after Trahant reached out to the journalist, the journalist published an online newspaper article disclosing the priest's name and details about the allegations against him. The article also disclosed information about the Archdiocese's Internal Review Board investigation and disposition of clergy abuse claims. All of this information was previously non-public. *Id.*

The Archdiocese responded to the leak by filing a sealed motion to compel the Committee to investigate the source of the breach. *Adams Ashe Opinion*, 652 B.R. at 143. The Archdiocese also asked the bankruptcy court to conduct an evidentiary hearing to consider imposing sanctions for the apparent violation of the protective order. *Id.* In April 2022, a series of status conferences and informal discovery between the Archdiocese and the Committee identified Trahant as the leaker. *Id.* This included discovery responses from the high school confirming that Trahant had contacted his cousin, and a declaration from Trahant in which he admitted revealing the information to his cousin and the journalist. *Trahant Ashe Opinion*, 678 F. Supp 3d. at 809. In his declaration, Trahant asserted his belief that protecting minors was a legitimate compelling reason that justified the disclosure.[3] *Id.* The bankruptcy court, now aware of these additional facts,

---

[3] Counsel for the Committee reached out to the Archdiocese's counsel on January 4, 2022, with concerns about the continued service of the priest as a chaplain at a local high school. In response, the Archdiocese's counsel contacted the Archdiocese and

appointed the Trustee to perform an independent investigation into the wrongful disclosure of the protected material. *Adams Ashe Opinion*, 652 B.R. at 143. As Judge Ashe's district court opinion in this case noted,

> [t]he bankruptcy court was concerned not only with enforcing its own Orders, but with the timing of such breach and the negative impact that violation would have on the functioning of the Committee, the rights of parties in interest in the bankruptcy process, and the ability of the parties in this case to proceed in good faith in the upcoming mediation of claims asserted against the estate.

*Id.* at 143–44 (internal quotation omitted). On June 3, 2022, after a nearly six-month long investigation, the Trustee filed its statement of position under seal, attaching 78 sworn declarations, 18 transcripts of sworn Rule 2004 examinations, and various other documents. *Id.* at 144. Judge Ashe's district court opinion described Trahant's deposition by the Trustee as follows:

> Trahant was adamant in his deposition that he did not believe his actions violated the protective order, but he also testified contradictorily that he felt restricted by it. He admitted, however, that he did not move for relief from the protective order to report what he claims were potential crimes, nor did he use the protective order's mechanism for challenging the Archdiocese's "confidential" designation of the documents it produced.

*Id.* at 144–45. Four days after receiving the Trustee's Report, the bankruptcy court issued its June 7, 2022, order finding that Trahant knowingly and willfully violated the protective order he was bound by and aware of. *Id.* at

---

learned that the priest was on extended medical leave and consequently had no contact with minors at the school. *Trahant Ashe Opinion*, 678 F. Supp 3d. at 806.

145. The bankruptcy court's order noted its "duty to protect the integrity of the bankruptcy process and enforce its own Orders," and found that Trahant's willful breach of the protective order "clearly disqualifies him from further receiving Protected Material in this case and participating in any confidential Committee proceedings, including meetings, deliberations, and mediation." *Id.* The bankruptcy court's June 7 order went on to discuss the Committee members' position in light of their attorney's misbehavior:

> [A]s personal counsel to individual Committee members, Trahant and his team of co-counsel received confidential information from the Debtor. The Court acknowledges that individual Committee members may retain the attorney of their choosing to represent their personal interests in this chapter 11 case and have chosen Trahant and his group. This Court certainly has no intention of invading the attorney-client privilege to modulate the communications between those Committee members and their attorneys; indeed, any attempt to regulate or stop the flow of information or candor that must exist between a client and her attorney is not only a futile endeavor, but would offend a fundamental facet of effective legal representation. Thus, an impasse has been reached.
>
> This Court must nevertheless act to protect against disruption of the bankruptcy process, to guard the rights of all parties in interest, and, most immediately in light of the current posture of this case, to preserve the trust in the confidentiality of mediation. Given Trahant's willful breach and disregard of this Court's Protective Order and the dynamics present on the Committee, the Court is forced to impute Trahant's actions to those of his clients on the Committee and finds cause for their removal from the Committee.

Thus, the bankruptcy court ordered the Trustee to remove Trahant's four clients, the Appellants here, from the Committee "to prevent an abuse of process and to ensure adequate representation of creditors." The court

rested its authority on Sections 105(a) and 1102(a)(4) of the Bankruptcy Code. *See* 11 U.S.C. §§ 105(a), 1102(a)(4). The June 7 order went on to state that the bankruptcy court would "issue a separate Order to Show Cause to determine appropriate sanctions for Trahant's disclosure of confidential information in violation of this Court's Protective Order." Trahant and Appellants separately appealed the June 7 order without seeking leave to file an interlocutory appeal. The appeals from both Trahant and his clients were allocated to Judge Greg Guidry. *Trahant Ashe Opinion*, 678 F. Supp 3d. at 812. In the meantime, the Trustee appointed three new Committee members who were also abuse claimants, bringing its membership total to five.

The Archdiocese filed a motion to dismiss the appeal, arguing that the Appellants lacked standing to appeal the June 7 order and that the district court lacked jurisdiction to hear the interlocutory appeal given the lack of exceptional circumstances. On August 11, 2022, Judge Guidry granted the Archdiocese's motion to dismiss the appeal, concluding that that the Appellants lacked standing to appeal their removal from the Committee because they identified no direct and adverse impact on their pecuniary interests that flowed from the bankruptcy court's order. Judge Guidry further rejected the Appellants' argument that they were "sanctioned" by the removal, in which instance the more lenient Article III or sanctions standing test would apply to their case.[4]

Bankruptcy court proceedings against Trahant, however, continued. In August 2022, the bankruptcy court held a show-cause/contempt hearing. *Id.* at *7. Two months later, the bankruptcy court issued an opinion and order imposing a $400,000 sanction on Trahant for his knowing and willful breach

---

[4] Below, we affirm Judge Guidry's conclusion that Appellants lacked standing, but we do so on different grounds.

of the protective order. *Id.* at *9. This amount was just over half of the $760,884.73 in attorney's fees and costs that the Archdiocese and Committee incurred in investigating and dealing with the breach of the protective order. *Id.*[5]

Trahant's clients, meanwhile, appealed to the Fifth Circuit, but after the case was fully briefed and set for argument, Judge Guidry entered an order of recusal in Trahant's consolidated appeals in April 2023. Judge Guidry informed the parties in Trahant's cases that the Committee on the Codes of Judicial Conduct had opined that he was not required to recuse because of his prior donations to and service on the board of Catholic charities that were not parties to the Archdiocese's bankruptcy case. But Judge Guidry decided to recuse voluntarily in Trahant's appeals after the Associated Press published a widely reprinted article suggesting that Judge Guidry could not be impartial because of his prior association with Catholic charities. *Id.* at *10.

Within days, Trahant's clients moved to vacate Judge Guidry's August 11, 2022, order in their case and disqualify him. Judge Guidry recused himself shortly after this court stayed the appeal pending resolution in the district court.

District Judge Ashe was reassigned a number of appeals stemming from the Archdiocese's bankruptcy. On June 21, 2023, Judge Ashe denied the Appellants' Rule 60(b)(6) motion to vacate the removal order, while also denying their motion to access the sealed Trustee Report from June 2022. *See Adams Ashe Opinion*, 652 B.R. at 141–42. Appellants appealed this order. The same day, Judge Ashe also issued an order holding that because

---

[5] Trahant's appeal of the bankruptcy court's sanction against him is pending in this court in case number 23-30466.

Judge Guidry's failure to recuse earlier was harmless error, he (Ashe) would not vacate the prior orders in Trahant's consolidated appeals. *Trahant Ashe Opinion*, 678 F. Supp 3d. at 831.

Both of the Appellants' appeals in this court were consolidated, and a further round of briefing followed on whether Judge Guidry's failure to recuse earlier was harmless error.

## STANDARD OF REVIEW

"We apply the same standard of review as did the district court: the bankruptcy court's factual findings are reviewed for clear error; its legal conclusions and mixed questions of fact and law, *de novo*." *In re Mercer*, 246 F.3d 391, 402 (5th Cir. 2001) (en banc). We review the district court's ruling on the Rule 60(b)(6) motion for abuse of discretion. *Roberts v. Wal-Mart La., L.L.C.*, 54 F.4th 852,854 (5th Cir. 2022).

## ANALYSIS

Because Judge Guidry's failure to recuse himself was harmless error, Judge Ashe did not err in denying the Appellants relief under Rule 60(b)(6). Further, the Appellants lack Article III standing to appeal their removal from the Committee; Judge Guidry did not err in dismissing their appeal.

*A. Judge Guidry Recusal*

The Supreme Court affirms that 28 U.S.C. § 455, which governs judicial recusals, "does not, on its own, authorize the reopening of closed litigation." *Liljeberg v. Health Servs. Acquisition Corp*, 486 U.S. 847, 863, 108 S. Ct. 2194, 2204 (1988). But as this court has noted:

> In the § 455(a) context, however, the Supreme Court has held that Rule 60(b)(6) relief be analyzed according to these three factors: "the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in

other cases, and the risk of undermining the public's confidence in the judicial process."

*Roberts*, 54 F.4th at 854 (quoting *Liljeberg*, 486 U.S. at 864, 108 S. Ct. at 2205).

A review of the law and facts makes clear that the district court did not abuse its discretion in denying the Appellants' Rule 60(b)(6) motion.[6]

On the first *Liljeberg* factor, Judge Ashe did not err in concluding that the availability of review before this court eliminated any risk of injustice from declining to vacate the judgment under Rule 60(b)(6). In the unique procedural posture of bankruptcy appeals, our review of Judge Guidry's underlying order is conducted under the same standards used by the district court. *In re ASARCO, L.L.C.*, 650 F.3d 593, 600 (5th Cir. 2011). Such essentially duplicative review is available to Appellants *regardless* of Judge Ashe's ruling on the Rule 60(b)(6) motion. This duality eliminates the risk of injustice. Decades ago, this court held that where the merits of a ruling would be subject to de novo review—such as a summary judgment ruling—"the parties are guaranteed a fair, impartial review of the merits of the ruling," and that "[i]n cases where we would otherwise affirm such a ruling,

---

[6] We reject the Appellants' argument that they were entitled to de novo review by the district court. This circuit recently held in a similar case that another district judge did not err in applying the harmless error standard to another Rule 60(b)(6) motion based on Section 455. *See Roberts*, 54 F.4th at 855. Appellants' alternative arguments that they were entitled to de novo review by the district court because their due process rights were violated also fail. *See United States v. Brocato*, 4 F.4th 296, 301 (5th Cir. 2021) ("If a failure to recuse constitutes a due process violation, such error is not subject to harmless-error review."). Appellants argue that their due process rights were violated because Judge Guidry's dismissal sanctioned them without notice and a hearing. This is wrong. First, as elaborated below, the bankruptcy court's removal of the Appellants from the Committee was not a sanction. Second, any procedural due process errors committed by the *bankruptcy court* cannot be bootstrapped into Judge Guidry's failure to recuse and the *Liljeberg* analysis as applied to him.

little would be gained by vacating and remanding with instructions that it be essentially reinstated." *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 485–86 (5th Cir. 2003) (quoting *In re Cont'l. Airlines Corp.*, 901 F.2d 1259, 1263 (5th Cir. 1990)).  This precedent of our court compels our resolution of the first factor, rather than contrary precedent from the Federal Circuit.[7]

On the second *Liljeberg* factor, Appellants contend the district court created injustice to the *Trahant* case by failing to vacate Judge Guidry's order.  Appellants claim that there will continue to be injustice in one or both cases if they are not resolved together, and that the district court's reliance on the facts and record in the *Trahant* appeal demonstrated as much.  Not so. The *Trahant* appeal turns, ultimately, on the bankruptcy court's imposition of sanctions on Trahant and whether Trahant was afforded procedural due process rights when the bankruptcy court sanctioned him.  In contrast, this case primarily turns on whether the Appellants have standing to challenge their removal from the Committee.

Moreover, these cases are not mutually dependent such that the disposition of one would necessarily control the disposition of the other. Specifically, the Appellants' removal from the Committee was the product of Trahant's misconduct, not theirs.  If Appellants terminated their attorney-client relationship with Trahant tomorrow, they and their new lawyer(s) could request their re-appointment to the Committee by the Trustee.  The outcome of that request could then moot or significantly modify the relevant issues in this appeal. Judge Ashe did not abuse his discretion in concluding

---

[7] *See Shell Oil Co. v. United States*, 672 F.3d 1283, 1294 (Fed. Cir. 2012) (holding that "a judge's failure to recuse does not automatically constitute harmless error whenever there is *de novo* review on appeal").

that there was no risk of injustice in the *Trahant* case due to Judge Guidry's order in this case.

Finally, Judge Ashe did not err in his analysis of the third *Liljeberg* factor. Appellants assert that Judge Guidry's order undermines public confidence in the judicial process because his silence as to the reasons for his recusal has engendered much public speculation. This is fallacious. The public was placed on notice of Judge Guidry's reasons from news reports and Judge Ashe's published opinions. Further, extensive public interest in the Archdiocese's bankruptcy does not inherently justify vacating Judge Guidry's order. As Judge Ashe's opinion states, there is a countervailing risk, which this Circuit has noted, to "mindlessly vacat[ing]" a recused judge's rulings—especially where that ruling rested on sound legal reasoning. *See Patterson*, 335 F.3d at 486.

*B. Standing.*

Until 1978, bankruptcy appellate standing was governed by a statute that stated: "*A person aggrieved* by an order of a referee may. . . file with the referee a petition for review. . . ." *In re Coho Energy, Inc.*, 395 F.3d 198, 202 (5th Cir. 2004) (emphasis added) (quoting 11 U.S.C. § 67(c) (1976) (repealed 1978)). "Congress expressly removed this provision when it enacted the Bankruptcy Code in 1978." *Matter of Highland Cap. Mgmt., L.P.* (*In re Highland Cap. Mgmt.*), 74 F.4th 361, 366 (5th Cir. 2023). Nonetheless, various of this court's opinions, relying largely on a footnote's worth of dicta in a 1994 opinion,[8] have continued to apply the "person aggrieved" standard for appeals from bankruptcy courts. Not only that, but the courts have described this as a higher and "more exacting" standard for evaluating

---

[8] *Rohm & Hass Tex., Inc. v. Ortiz Bros. Insulation*, 32 F.3d 205, 210 n.18 (5th Cir. 1994).

standing in bankruptcy appeals than in cases arising under Article III. *Id.; see also Matter of Dean* (*In re Dean*), 18 F.4th 842, 844 (5th Cir. 2021); *Matter of Technicool Sys., Inc.* (*In re Technicool*), 896 F.3d 382, 385 (5th Cir. 2018); *Fortune Nat. Res. Corp. v. U.S. Dep't of Interior*, 806 F.3d 363, 366 (5th Cir. 2015); *In re Coho Energy, Inc.*, 395 F.3d at 202.[9]

In light of the statutory change, the ground for imposing this superseded gloss on the provisions governing bankruptcy appeals to district courts and courts of appeals is uncertain at best. *See* 11 U.S.C. §§ 158(a), 158(d)(2); *see also In re Cap. Contracting Co.*, 924 F.3d 890, 896 (6th Cir. 2019). Indeed, this court's "exacting" "person aggrieved" test may be incompatible with the Supreme Court's decision in *Lexmark*, which cast doubt on the role of prudential standing rules in federal courts. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S. Ct. 1377, 1386 (2014); *see also In re GT Automation Grp., Inc.*, 828 F.3d 602, 605 n.1 (7th Cir. 2016).

But even if we were to assume, arguendo, that the "narrower" bankruptcy appellate standing test did not apply and that Article III standing controls this appeal, the outcome would be the same. Appellants cannot show that the bankruptcy court's order removing them from the Committee injured a legally protected interest. Specifically, they were not in any way "sanctioned," and no creditor has a "right" to serve or continue serving on a Creditors Committee.

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and

---

[9] This would appear to put our court in conflict with at least the Eleventh Circuit. *See In re Ernie Haire Ford, Inc.*, 764 F.3d 1321, 1325 n.3 (11th Cir. 2014); *see also In re Schubert*, No. 21-3969, 2023 WL 2663257, at *2–*3 (6th Cir. Mar. 28, 2023) (insinuating that the "person aggrieved" test had likely been overruled by the Supreme Court).

particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339, 136 S. Ct. 1540, 1548 (2016), (quotation marks omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992)), *as revised* (May 24, 2016).  Here, the Appellants have failed to demonstrate an injury to any legally protected interest.  The statutory procedures for appointing members of a Creditors Committee do not guarantee any member the right to *remain* on the Committee.  Instead, Section 1102 of the Bankruptcy Code, which authorizes the formation of Creditors' and Equity Security Holders' Committees, states that the United States Trustee shall appoint an Official Committee of Unsecured Creditors and other committees "as the United States Trustee deems appropriate."  11 U.S.C. § 1102(a)(1).  The provision goes on to specify the procedures that should be taken to remove a committee member:

> On request of a party in interest and after notice and a hearing, the court may order the United States trustee to change the membership of a committee appointed under this subsection, if the court determines that the change is necessary to ensure adequate representation of creditors or equity security holders.

*Id.* § 1102(a)(4).  It is undisputed that the bankruptcy court issued the June 7 Order sua sponte, without notice and hearing or a formal request from a party in interest.  Nonetheless, if there is a right to be removed from a committee according to the procedures specified under Section 1102(a)(4), it is distinct from the right to serve on the committee in the first place.[10]

We hold that a lack of proper notice and hearing under Section 1102(a)(4) cannot violate a legally protected interest when there is no

---

[10] Further, even if the Bankruptcy Court did give short shrift to the procedural requirements of Section 1102(a)(4), its order specified that it was also acting pursuant to its powers under Section 105(a) of the Bankruptcy Code in order to "prevent an abuse of process and to ensure adequate representation of creditors." 11 U.S.C. § 105(a).

underlying right to remain on a Creditors Committee, and when the ultimate outcome of the proceeding would have been the same. Here, Trahant had admitted to violating the protective order, the Appellants had participated in the Trustee's investigation and testified under oath, and the Trustee had already submitted its report after a comprehensive investigation to the bankruptcy court. The Appellants were clearly on notice that Trahant's continued representation of them, and his open violation of the protective order, would have significant consequences for the course of the bankruptcy case. But Appellants chose to continue retaining him as their counsel, and the court's action was geared towards protecting their choice of counsel. In short, by the time the bankruptcy court removed Appellants from the Committee, the evidentiary record justifying their removal was well settled and well known to the Appellants and all other parties. That the bankruptcy court did not reveal the full contents of the Trustee's report, which dealt with extremely sensitive information that the bankruptcy court had designed specific procedures to protect, does not change this analysis.

In addition, this case is readily distinguishable from constitutionally-footed due process cases, where courts have identified a legally protected property interest requiring a pre-deprivation hearing. *See, e.g.*, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S. Ct. 1487, 1495 (1985) (holding that a public employee must be provided with "some kind of hearing" before termination); *Goldberg v. Kelly*, 397 U.S. 254, 263–64, 90 S. Ct. 1011, 1017–18 (1970) (holding that the government may not terminate welfare benefits without providing a pre-termination evidentiary hearing). Appellants have not pointed to any authorities suggesting that there is any right to serve on a Creditors Committee, nor have they identified any property rights that have been negatively affected by their removal from the Committee. Their substantive rights as creditors in the bankruptcy case have not been impaired in any way by their removal from the Committee.

No. 22-30539

Further, in removing the Appellants from the Committee, the bankruptcy court did not personally sanction them. Removal did not flow from their individual conduct, but from the conduct of an attorney they could fire at any time. That distinguishes this case from *In re Cleveland Imaging & Surgical Hospital, L.L.C.*, 26 F.4th 285, 295 (5th Cir. 2022). In *Cleveland*, the bankruptcy court levied over $40,000 in sanctions against parties for a bad-faith violation of an automatic stay. *Id.* The sanctioned parties' property rights in assets outside the bankruptcy were curtailed by the sanctions order. Here, however, Appellants have lost nothing. Finally, the bankruptcy court's order did not amount to an "injunction" granting them standing to appeal the bankruptcy court's order, and the Appellants do not have separate standing as ex-committee members.[11]

In sum, Judge Ashe did not abuse his discretion in denying the Appellants' Rule 60(b)(6) motion, and the Appellants lacked standing to appeal from the bankruptcy court to the district court. Accordingly, the district court's orders and judgment are AFFIRMED for the reasons stated in this opinion.[12]

---

[11] The authorities cited by the Appellants for that argument relate to the standing of the *Committee*—not its *individual members*, and certainly not its *former* members. *See In re Dow Corning Corp.*, 212 B.R. 258, 264 (E.D. Mich. 1997); *S. Pac. Transp. Co. v. Voluntary Purchasing Grps., Inc.*, 227 B.R. 788, 791–92 (E.D. Tex. 1998); *The Off. Comm. of Unsecured Creditors of W. Pac. Airlines, Inc. v. W. Pac. Airlines, Inc. (In re W. Pac. Airlines, Inc.)*, 219 B.R. 575, 578 (D. Col. 1998); *Masters, Mates & Pilots Plans v. Lykes S.S. Co. (In re Lykes S.S. Co.)*, 200 B.R. 933, 936 (M.D. Fla. 1996).

[12] Accordingly, we DENY the Appellees' motion to dismiss the appeal and DENY the Appellants' motions to view and obtain sealed documents and to unseal the entire appellate record.