In re The CELOTEX CORPORATION,
Debtor.

Asbestos Settlement Trust, Plaintiff,

v.

Port Authority of New York and
New Jersey, Defendant.

Bankruptcy No. 90–10016–8G1.
Adversary No. 8:02–ap–867–PMG.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 27, 2006.

Andrew T. Jenkins, Jeffrey W. Warren, Bush Ross, P.A., Tampa, FL, for Plaintiff.

Milton H. Pachter, Shirley J. Goldstein, New York, NY, for Defendant.

James L. Patton, Young Conaway Stargatt & Tayloe, LLP, Wilmington, DE, for Intervenor–Plaintiff.

Jeffrey A. Liesemer, Caplin & Drysdale Chartered, Washington, DC, for Intervenor–Plaintiff/Trust Advisory Committee.

Elihu Inselbuch, Caplin & Drysdale, Chartered, New York, NY, for Trust Advisory Committee.

## ORDER ON (1) JOINT MOTION OF THE LEGAL REPRESENTATIVE AND THE TRUST ADVISORY COMMITTEE TO INTERVENE, AND (2) PDAC'S MOTION TO INTERVENE

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider (1) the Joint Motion of the Legal Representative and the Trust

Advisory Committee to Intervene, and (2) the Property Damage Advisory Committee's Motion to Intervene.

The Asbestos Settlement Trust (the Trust) commenced this adversary proceeding by filing a Complaint seeking a declaration that certain "disputed claims" submitted by the Port Authority of New York and New Jersey (the Port Authority) "fail to satisfy the legal prerequisites for payment by the Trust and that the Trustees did not abuse their discretion in their determination that the Disputed Claims should not be paid." (Doc. 1, Complaint, p. 2).

The Legal Representative and the Trust Advisory Committee (TAC) request permission to intervene in the adversary proceeding in support of the claims for relief asserted by the Trust against the Port Authority. (Doc. 14).

The Property Damage Advisory Committee (PDAC) requests permission to intervene in this proceeding on the basis of its fiduciary duties to all Property Damage claimants, including the Port Authority. (Doc. 20).

The Trust filed a written opposition to the PDAC's Motion. (Doc. 24).

### Background

#### A. The proceeding

The Celotex Corporation (Celotex) was engaged in the business of manufacturing, marketing, and distributing building materials. Carey Canada Inc. (Carey Canada) was engaged in the business of asbestos mining until it ceased operations in 1986.

Celotex and Carey Canada filed petitions under chapter 11 of the Bankruptcy Code on October 12, 1990.

On October 25, 2002, the Trust commenced this adversary proceeding by filing a Complaint for Declaratory Relief as to the Asbestos Property Damage Claims Submitted by Port Authority of New York and New Jersey. (Doc. 1).

In the Complaint, the Trust alleges that:

7. Port Authority has asserted Claim No. 518–1001–001 ("World Trade Center") and Claim No. 518–1002–001 ("Two World Trade Center") seeking payment for Total Allowed Costs of $7,767,145.00 and $7,503,444.30 respectively.

These Port Authority PD Claims are based on the alleged presence of Carey Canada asbestos fiber ("Carey Fiber") in asbestos-containing floor tile products ("VAT") manufactured by Armstrong World Industries Inc. ("Armstrong").

The Property Damage Claims Administrator submitted the Port Authority's Claims to the Trust for payment, but the Claims have not been paid.

The Trust contends that it did not pay the Port Authority's Claims because they "do not satisfy the legal prerequisites for payment mandated by the Confirmation Order." (Doc. 1, Complaint, Para. 8). Accordingly, the Trust seeks the "entry of a judgment declaring that the resubmitted claims which are identified in this Complaint ('Disputed Claims') fail to satisfy the legal prerequisites for payment by the Trust and that the Trustees did not abuse their discretion in their determination that the Disputed Claims should not be paid." (Doc. 1, Complaint, Para. 2).

#### B. The moving parties

The matters before the Court are a Joint Motion to Intervene filed by the Legal Representative and the TAC, and a separate Motion to Intervene filed by the PDAC. In order to evaluate the requests for intervention, it is necessary to examine the functions and obligations of the respective moving parties.

### 1. The Legal Representative

On February 13, 1995, the Court entered an Order Approving and Authorizing the Appointment of a Legal Representative, which provided in part:

> [T]hat a legal representative (the "Legal Representative") shall be appointed to protect the rights of, act on behalf of, and otherwise represent the interests of all present and future persons, . . . who at any time assert or may assert an Asbestos Bodily Injury Claim (as hereinafter defined) and who (i) have been or assert that they have been exposed to asbestos or asbestos-containing products and have or assert that they have manifested an asbestos-related injury but who are unknown as of the date the Legal Representative is appointed and therefore may not be provided with notice of the proceedings, . . . (the foregoing Persons are collectively referred to herein as the "Unknown Asbestos Bodily Injury Claimants").

(Main Case Doc. 3076, pp. 2–3).

The duties of the Legal Representative include the representation of the Unknown Asbestos Bodily Injury Claimants in all court proceedings affecting their interests, and taking any other actions necessary to protect the rights of the Unknown Asbestos Bodily Injury Claimants. (Main Case Doc. 3076, pp. 5–6). See also 11 U.S.C. § 524(g)(4), which relates to the appointment of a Legal Representative for the purpose of protecting the rights of persons that might subsequently assert "demands" for payment, as set forth in that section.

Further, the Findings of Fact and Conclusions of Law Regarding the Modified Joint Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code for The Celotex Corporation and Carey Canada Inc. provides:

> The Legal Representative was appointed by the Bankruptcy Court as part of the proceedings leading to the issuance of the Supplemental Injunction, the Third Party Injunction and the VPSA Injunction *for the purpose of, among other things, protecting the rights of persons that might subsequently assert Demands* of the kind that are addressed in the Supplemental Injunction, the Third Party Injunction and the VPSA Injunction and transferred to and assumed by the Trust.

*The Celotex Corporation,* 204 B.R. 586, 605 (Bankr.M.D.Fla.1996)(Emphasis supplied).

### 2. The TAC

The Modified Joint Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code for The Celotex Corporation and Carey Canada Inc. defines the TAC as the "committee appointed and serving in accordance with Article 5 of the Plan and having the powers, duties and obligations set forth in the Trust Agreement."

Article 5 of the Plan states that the TAC "shall have six members and shall have the functions and rights provided in the Trust Agreement."

Section 7.1 of the Trust Agreement provides as follows:

#### ARTICLE 7
#### TRUST ADVISORY COMMITTEE

> 7.1 Formation; Duties. The TAC shall be formed. . . . The Trustees must consult with the TAC on matters identified in Article 3.2(e)(i) and may consult with the TAC on any matter affecting the Trust. The *TAC and its members shall serve in a fiduciary capacity representing all holders of Asbestos Personal Injury Claims* (excluding, however, holders of Demands).

(Trust Agreement, § 7.1)(Emphasis supplied).

Section 3.2(e)(i) of the Trust Agreement, as referenced in Section 7.1 quoted above, provides that the "Trustees shall consult with (i) the TAC and the Legal Representative on the implementation and administration of the APICRP [the Asbestos Personal Injury Claims Resolution Procedures]." (Trust Agreement, § 3.2(e)(i))(Emphasis supplied).

### 3. The PDAC

The duties of the PDAC are set forth, in part, in the Second Amended and Restated Asbestos Settlement Trust Agreement. Specifically, the Trust Agreement provides as follows:

### ARTICLE 8
### PD ADVISORY COMMITTEE AND PDCA CONSENT

**8.1 Formation; Duties.** The PD Advisory Committee shall be formed and shall exist from the Confirmation Date until the date the Trust pays the last Allowed PD Claim and all disallowed PD Claims have been disallowed by final, non-appealable order. The PD Advisory Committee shall be composed of Daniel A. Speights, Esquire, Martin Dies, Esquire and Karen Ruth Cordry, Esquire. The Trustees must consult with the PD Advisory Committee on matters identified in Article 3.2(e)(ii). *The PD Advisory Committee and its members shall serve in a fiduciary capacity representing all holders of PD Claims.* Where provided in this Trust Agreement or the APDCRP, actions by the Trustees are subject to the consent of the PD Advisory Committee.

(Trust Agreement, Para. 8.1)(Emphasis supplied).

Section 3.2(e)(ii) of the Trust Agreement, as referenced in § 8.1 quoted above, provides that the "Trustees *shall* consult with ... (ii) without limiting or abridging Article 3.3(c), the PDCA and the PD Advi-

sory Committee on the implementation and administration of the APDCRP." (Trust Agreement, § 3.2(e)(ii))(Emphasis supplied).

Additionally, the Asbestos Property Damage Claims Resolution Procedures (APDCRP) sets forth the function of the PDAC to consult and participate with the Property Damage Claims Administrator "on all major policy and administrative decisions affecting, and the interpretation and implementation of, the APDCRP." (APDCRP, Para. II). The APDCRP also identifies those matters about which the PDCA must obtain the PDAC's consent. (APDCRP, Para. II).

### Discussion

█ Rule 24(a) of the Federal Rules of Civil Procedure, as made applicable to this adversary proceeding by Rule 7024 of the Federal Rules of Bankruptcy Procedure, provides:

**Rule 24. Intervention**

(a) **Intervention as of Right.** Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties. F.R.Civ.P. 24(a). In this case, the federal statute implicated by Rule 24(a)(1) is § 1109(b) of the Bankruptcy Code. That section provides:

**11 U.S.C. § 1109. Right to be heard**

. . .

(b) *A party in interest,* including the debtor, the trustee, a creditors' commit-

tee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, *may raise and may appear and be heard on any issue in a case under this chapter.*

11 U.S.C. § 1109(b)(Emphasis supplied). Section 1109(b) is generally interpreted broadly to allow parties in interest an opportunity to appear and be heard in proceedings that affect their interests. *Southern Pacific Transportation Company v. Voluntary Purchasing Groups, Inc.,* 227 B.R. 788, 793 n. 6 (E.D.Tex.1998).

## A. Rule 24(a)(1)

As set forth above, Rule 24(a)(1) of the Federal Rules of Civil Procedure provides that "anyone shall be permitted to intervene in an action" if a federal statute authorizes the unconditional right to intervene. The Court determines that the Legal Representative, the TAC, and the PDAC should be permitted to intervene pursuant to Rule 24(a)(1).

The basis for this conclusion is found in paragraph 17 of the Order Confirming Plan entered on December 6, 1996. That paragraph provides:

17. The appointment of the initial Trustees of the Trust and the initial members of the Trust Advisory Committee and the PD Advisory Committee, as well as the Property Damage Claims Administrator, the Legal Representative, and the Representative Indirect Asbestos Claimant, as of the Confirmation Date, shall be, and hereby is, approved. Each Trustee, *the Trust Advisory Committee, the PD Advisory Committee,* the Property Damage Claims Administrator, the *Legal Representative,* and the Representative Indirect Asbestos Claimant *shall be, and hereby is deemed to be, a "party in interest" on and after the Effective Date within the meaning of Section 1109(b) of the Bankruptcy Code.*

*In re The Celotex Corporation,* 204 B.R. 586, 619–20 (Bankr.M.D.Fla.1996).

The Order Confirming Plan is a final, binding Order of this Court.

It is clear, therefore, that the Legal Representative, the TAC, and the PDAC, are "parties in interest" under § 1109(b) of the Bankruptcy Code.

Section 1109(b) authorizes "parties in interest" to "appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b).

The authorization provided by § 1109(b) to appear and be heard on "any issue in a case" extends to adversary proceedings pending in the main bankruptcy case. *In re The Caldor Corporation,* 303 F.3d 161 (2d Cir.2002).

An entity's status as a "party in interest" under § 1109(b) satisfies the standard for intervention required by Rule 24(a)(1) of the Federal Rules of Civil Procedure, since a "statute of the United States confers an unconditional right to intervene." *Official Committee of Asbestos Claimants of G–I Holding, Inc. v. Heyman,* 2003 WL 22790916, at *2 (S.D.N.Y.). Since the Legal Representative, the TAC, and the PDAC are conclusively determined to be "parties in interest" under § 1109(b) by virtue of the Order Confirming Plan, they should be permitted to intervene in this proceeding pursuant to Rule 24(a)(1).

## B. Rule 24(a)(2)

Additionally, intervention by the Legal Representative, the TAC, and the PDAC is justified in this case because they have an interest in the transaction or the property that is the subject of the proceeding, and the outcome of the proceeding may impair their ability to protect that interest if intervention is not permitted.

Upon timely motion to intervene, "[t]he proposed intervenor must show that it has an interest in the subject matter of the suit, that its ability to protect that interest may be impaired by the disposition of the suit, and that the existing parties in the suit cannot adequately protect that interest." *Georgia v. United States Army Corps of Engineers,* 302 F.3d 1242, 1245 (11th Cir.2002).

### 1. The Legal Representative and the TAC

■ It is clear that "the Trust is to use its assets and income to pay Asbestos Claims, as defined in the Plan, against the Debtors." (Second Amended and Restated Asbestos Settlement Trust Agreement, p. 3). The term "Asbestos Claim" is defined in the Plan as "any Asbestos Personal Injury Claim or Asbestos Property Damage Claim." (Modified Joint Plan of Reorganization, Para. 1.12) Accordingly, Trust assets are to be used to pay both Asbestos Personal Injury Claims and Asbestos Property Damage Claims.

It is also clear that the Trust's assets are not unlimited. Consequently, "[e]very dollar spent to pay a PD claim is a dollar that cannot go to pay PI claims. See, e.g., Anderson Intervention Order at 11 (Adv. No. 02–521)(Dkt.No. 34)('[E]very dollar paid for an asbestos property damage claim that fails to satisfy the legal prerequisites for payment . . . is a dollar that will not be available to pay PI Claims as they are processed by the Trust over the next 40 years.')." (Doc. 14, p. 7).

As set forth above, the Legal Representative and the TAC are charged with the duty of protecting the interests of the present and future Asbestos Personal Injury Claimants. If they are not permitted to intervene, therefore, their ability to protect their constituencies' interests may be impaired or impeded, since the disposition of this action will ultimately affect the distribution of Trust assets and the amount of the funds that are available to pay Personal Injury Claims.

■ "[T]he proposed intervenor has a minimal burden of showing that the existing parties cannot adequately represent its interest." *Georgia v. U.S. Army Corps of Engineers,* 302 F.3d at 1259.

In this case, the Trustees have duties to all claimants, and the Trust has no specific economic interest in the outcome of the litigation. (Order on Joint Motion of the Legal Representative and the TAC to Intervene, Adv. 03–690, Doc. 18, p. 14). The Legal Representative and the TAC, however, have singular constituencies with clear economic interests. The minimal burden is met. See *Georgia v. U.S. Army Corps of Engineers,* 302 F.3d at 1259; *Meek v. Metropolitan Dade County,* 985 F.2d 1471, 1478 (11th Cir.1993); and *In re Golden Glades Regional Medical Center, Ltd.,* 147 B.R. 813 (Bankr.S.D.Fla.1992).

The Legal Representative and the TAC should be permitted to intervene in this adversary proceeding pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure, based on their interest in the property or the transaction that is the subject of this action.

### 2. The PDAC

■ The PDAC also has an interest in the subject matter of this proceeding that may be impaired if it is not permitted to intervene.

It is important, for example, that the PDAC and its members "serve in a fiduciary capacity representing all holders of PD Claims." (Trust Agreement, Para. 8.1). In fact, the language of the Trust Agreement setting forth the PDAC's fiduciary duties to Property Damage Claimants is virtually identical to the Trust Agreement's language setting forth the TAC's

fiduciary duties to the Personal Injury Claimants. (See Trust Agreement, Para. 7.1). The Court has found, of course, that the TAC should be permitted in this proceeding pursuant to Rule 24(a)(2).

In any event, the basic issue in this case is whether the Trust may refuse to pay claims that have been previously allowed by the Property Damage Claims Administrator. The ramifications of this issue extend beyond the claim of the Port Authority to the claims of multiple other Property Damage Claimants. These ramifications include, for example, the manner in which such claimants are required to provide "reasonable evidence" of "Celotex ACM" and a "legally viable cause of action."

As set forth above, the PDAC not only represents all holders of Property Damage Claims, but is also obligated to serve those claimants in a fiduciary capacity. Consequently, the PDAC's fiduciary obligation to all Property Damage claimants with respect to these common evidentiary issues justifies its intervention in a dispute that will ultimately impact the rights of its constituency.

Finally, the issue that arose from the Trust's refusal to pay certain allowed claims involves the duties of the PDAC as set forth in the Trust Agreement and the APDCRP. The Trust Agreement provides, for example, that the Trustees must consult with the PDAC regarding specific matters, including the "implementation and administration of the APDCRP," and that certain actions of the Trustees may be subject to the PDAC's consent. (Trust Agreement, Paras. 3.2(e)(ii), 8.1). Additionally, the APDCRP provides that the PDAC is required to "consult and participate with the Property Damage Claims Administrator on all major policy and administrative decisions affecting, and the interpretation and implementation of, the APDCRP." (APDCRP, Para. II).

The Trust asserts that the claims submitted to it for payment by the PDCA are not valid claims under the rules established by the APDCRP. Since a primary function of the PDAC is to participate in the implementation and administration of those rules, this dispute directly involves the PDAC's obligations and duties under the Trust Agreement and the APDCRP.

Based on the above, the Court finds that the PDAC has a substantial interest in this proceeding by virtue of its fiduciary duty to all Property Damage Claimants, and also by virtue of its obligation to participate in the claims resolution process until all Property Damage Claims have either been paid or disallowed by a final, non-appealable order. (Trust Agreement, Para. 8.1).

The PDAC should be permitted to intervene in this adversary proceeding pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure.

### Conclusion

The Joint Motion of the Legal Representative and the TAC to Intervene, and the Motion of the PDAC to Intervene, should be granted pursuant to Rule 24(a)(1) of the Federal Rules of Civil Procedure, because the Legal Representative, the TAC, and the PDAC are all "parties in interest" within the meaning of § 1109(b) of the Bankruptcy Code, as established by the Order Confirming Plan entered on December 6, 1996.

Further, the Legal Representative, the TAC, and the PDAC should also be permitted to intervene pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure, because they have an interest in the property or transaction that is the subject of this action, and that interest may be impaired by the outcome or disposition of this proceeding if intervention is not allowed.

Accordingly:

**IT IS ORDERED** that:

1. The Joint Motion of the Legal Representative and the Trust Advisory Committee to Intervene is granted, and the Legal Representative and the Trust Advisory Committee are permitted to intervene in this adversary proceeding pursuant to § 1109(b) of the Bankruptcy Code and Rule 24 of the Federal Rules of Civil Procedure.

2. The Property Damage Advisory Committee's Motion to Intervene is granted, and the Property Damage Advisory Committee is permitted to intervene in this adversary proceeding pursuant to § 1109(b) of the Bankruptcy Code and Rule 24 of the Federal Rules of Civil Procedure.